NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 106

No. 2014-373

In re Cherie Hyde

Supreme Court

On Appeal from
Superior Court, Chittenden Unit,
Civil Division

April Term, 2015

Dennis R. Pearson, J.

Matthew Valerio, Defender General, and Kelly Green, Prisoners' Rights Office, Montpelier, for
  Petitioner-Appellant.

Thomas J. Donovan, Jr., Chittenden County State's Attorney, and Pamela Hall Johnson,
  Deputy State's Attorney, Burlington, for Respondent-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **SKOGLUND, J.**   Petitioner Cherie Hyde brought an action for post-conviction relief (PCR), challenging her felony conviction and sentence for aiding another as an accessory to commit sexual assault on a child under the age of sixteen. She appeals from the trial court's order granting summary judgment to the State on that PCR petition. We affirm.

¶ 2.    The following facts are taken from the trial court's decision. At the time in question, thirty-four-year-old Mark Hulett, described by petitioner as an old friend from school, stayed at the Hyde residence most Sunday and Monday nights. In 2005, Hulett was arrested and charged with two counts of aggravated sexual assault of a minor, K.G., then ten years old. K.G. is petitioner's daughter. Hulett pled guilty and was subsequently sentenced. Shortly thereafter,

while in therapy to address her victimization by Hulett, K.G. disclosed to her therapist that petitioner, her mother, had witnessed Hulett sexually assaulting her in K.G.'s bedroom in petitioner's mobile home on at least six different occasions. On one occasion, her mother came into her room while Hulett was molesting her, did nothing to stop Hulett's assault, made direct eye contact with her, put a sleeping pill for K.G. on the dresser, and then left the room, closing the door behind her.

¶ 3. Following these revelations, the Chittenden Unit for Special Investigations (CUSI) began an investigation. The CUSI team interviewed Hulett at the correctional facility. He stated that he had stayed at petitioner's residence almost every Sunday and Monday night for years, that he slept in the same room and same bed with K.G., that petitioner had "told K.G. to go to bed with him," and that petitioner regularly saw them in bed together when she closed their bedroom door at night.

¶ 4. During the investigation, petitioner acknowledged allowing Hulett to sleep in the same room and bed with K.G., even after her husband raised concerns. She admitted to the incident disclosed by K.G. of walking in on Hulett molesting K.G., making eye contact, and doing nothing. She confirmed that she did not stop Hulett from assaulting her daughter.

¶ 5. Petitioner was initially charged in December 2008 with one count of misdemeanor cruelty to a child between 2003 and May 17, 2005 (the date Hulett was arrested and charged), based on neglect and endangering the child's safety and welfare. On January 16, 2009, the State filed an amended information against petitioner to add a second felony count of accessory to, and aiding another to commit, aggravated sexual assault between 2003 and 2005, based on Hulett's commission of that crime in violation of 13 V.S.A. § 3253(a)(8) (victim under thirteen years of age). See 13 V.S.A. § 3 (accessory aiding commission of felony).

¶ 6. On November 6, 2009, the State and petitioner reached a plea agreement dismissing the first count of misdemeanor child cruelty and amending the second, the felony

2

count, to aiding and being an accessory to sexual assault under 13 V.S.A. §§ 3, 3252(c) (any sexual act with a child under age sixteen),[1] instead of the previously charged crime of accessory to aggravated sexual assault. The court accepted petitioner's guilty plea to the amended information and sentenced her to the maximum allowable sentence consistent with the plea agreement: two to ten years.

¶ 7. Prior to the plea agreement, petitioner's trial counsel had filed a motion to dismiss the misdemeanor child-cruelty charge on the ground that prosecution for that offense was commenced outside the applicable statute of limitations for misdemeanor charges: "Prosecutions for other felonies and for misdemeanors shall be commenced within three years after the commission of the offense, and not after." 13 V.S.A. § 4501(e). Trial counsel considered, but did not file, a similar motion with respect to the felony charge of accessory to sexual assault. He concluded there was little chance of success, reasoning that a felony accessory charge, under Vermont statutory and case law, was not a different or separate "other felony" for purposes of § 4501(e), but would be deemed to be a prosecution for the same felony charged against the principal actor, with respect to statute of limitations.

¶ 8. In 2013, petitioner filed a PCR petition seeking to overturn her conviction and sentence. She raised three issues in her petition: (1) the three-year statute of limitations governing aiding in the commission of a sexual assault had expired, see In re Jones, 2009 VT 113, ¶ 9, 187 Vt. 1, 989 A.2d 482; (2) she was denied effective assistance of counsel when her attorney failed to raise the statute-of-limitations defense; and (3) the court failed to establish a factual basis for the claim, and therefore, her plea was not voluntary. The court denied her motion for summary judgment on all grounds and granted the State's cross-motion for summary judgment. This appeal followed.

---

[1] The State actually charged petitioner under § 3252(a)(3), the version of § 3252(c) that was in effect at the time the information was filed.

3

¶ 9. We review summary judgment decisions de novo, using the same standard as the trial court. In re Barrows, 2007 VT 9, ¶ 5, 181 Vt. 283, 917 A.2d 490. This Court will affirm the decision of the trial court if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Ross v. Times Mirror, Inc., 164 Vt. 13, 17-18, 665 A.2d 580, 582 (1995); V.R.C.P. 56(a).

¶ 10. The Vermont statute of limitations for criminal acts sets the time period in which prosecutions for crimes may be commenced. See 13 V.S.A. § 4501. Prosecutions for felonies must be commenced within three years after the commission of the offense unless they are specifically listed in the statute and given a longer period. Id. § 4501(e). Aggravated sexual assault is one such specifically listed crime. At the relevant time, prosecutions for aggravated sexual assault, aggravated sexual assault of a child, murder, arson causing death, and kidnapping could be commenced at any time after the commission of the offense.[2] In other words, there was no limitations period. See id. § 4501(a). Under § 4501(b) as it read in November 2009, prosecutions for sexual assault could be "commenced within six years after the commission of the offense, and not after."

¶ 11. Petitioner argues that the crime of aiding in the commission of a felony is not specifically listed in the statute of limitations under either §§ 4501(a) or (b) and, therefore, prosecutions for the crime must be commenced within three years after the commission of the offense, relying on 4501(e). As noted above, subsection (e) provides that prosecutions for misdemeanors and other felonies shall be commenced within three years. Her premise fails because an accessory to felony charge under 13 V.S.A. § 3 is not a separate and distinct "other felony" for purposes of 13 V.S.A. § 4501(e), as it is not wholly divorced from the principal crime to which the person is allegedly an accessory.

---

[2] The offenses of human trafficking, and aggravated human trafficking were added to 4501(a) in 2011.

¶ 12.    Section 3 of Title 13 establishes accomplice liability.  It states that "[a] person who aids in the commission of a felony shall be punished as a principal."  13 V.S.A. § 3; see State v. Jaramillo, 140 Vt. 206, 208, 436 A.2d 757, 759 (1981) (explaining that aiding in commission of felony will support conviction as principal).  "Accomplice liability is meant to convict 'defendants who intended to, and did in fact, aid in the commission of the charged offense, but who were not the primary perpetrators of the crime or did not participate in every aspect of the planned illegal act.' "  State v. Pitts, 174 Vt. 21, 23-24, 800 A.2d 481, 483 (2002) (quoting State v. Bacon, 163 Vt. 279, 290, 658 A.2d 54, 62 (1995)).  This Court has time and again emphasized that the accessory is in all respects to be treated—in the words of 13 V.S.A. § 3, "punished"—in exactly the same manner as one charged with the principal crime, including the requirement of a common plan and the same degree of specific intent.  Id. at 26, 800 A.2d at 485 (citing Jaramillo, 140 Vt. at 208, 436 A.2d at 758).  In contrast, 13 V.S.A. § 5, enacted as part of the same bill that established 13 V.S.A. § 3, sets forth a distinct penalty for "accessories after the fact" without reference to the principal, making it clear that "accessory after the fact" is a separate crime, whose perpetrators must be treated differently from principals.  If one is to be "punished" for aiding and abetting a felony offense the same as the principal actor, then one can fairly and rightfully expect to be brought to justice for that crime within the same limitations period as the principal.

¶ 13.    This view has support in other jurisdictions as well.  See, e.g., United States v. Campbell, 426 F.2d 547, 553 (2d Cir. 1970) (reviewing similar statute proscribing accessory aiding in commission of felony and holding that accessory statute "does not define a crime; rather it makes punishable as a principal one who aids or abets the commission of a substantive crime"); Reed v. State, 793 N.W.2d 725, 734 (Minn. 2010) ("[F]or statute-of-limitations purposes, a charge of aiding and abetting first-degree murder is indistinguishable from a charge of first-degree murder.").

¶ 14.   Petitioner's citations to contrary authority are unpersuasive.  She cites three out-of-state decisions that place inchoate offenses in the default statute-of-limitations provisions of their respective statutory schemes, but their statutory schemes are unlike that of Vermont, and thus inapposite.  She also sets forth an untenable reading of State v. Stewart, 140 Vt. 389, 438 A.2d 671 (1981), claiming this Court implied that "embezzlement and aiding in the commission of an embezzlement are separate crimes and fall under the three-year statute of limitation because they are both 'other felonies.' "  The dispute in Stewart centered on tolling statutes of limitations and classifying various types of embezzlement by a principal—issues not presented here—but to the extent Stewart provides any guidance in this case, it actually supports our conclusion.  We made only one statement, in dicta, regarding the limitations period applicable to the crime of aiding in the commission of embezzlement, noting merely that a principal embezzlement charge and an accessory-to-embezzlement charge were subject to the same three-year limitations period.  Id. at 394, 438 A.2d at 673.  Petitioner's interpretation of Stewart is simply wrong.  Accessory felony charges are categorized alongside their underlying principal felonies for purposes of statute of limitations.

¶ 15.   Vermont's statute of limitations was created in major part to protect potential defendants from being forced to defend against charges when the passage of time has obscured basic facts.  See In re Jones, 2009 VT 113, ¶ 10 (citing State v. Delisle, 162 Vt. 293, 315, 648 A.2d 632, 646 (1994) (Johnson, J., concurring)).  These deadlines also encourage prompt investigation of crimes.  Id.  It would be contrary to logic and would undermine the policy underlying our statute of limitations to hold that the State had less time to charge accessories to a crime than it had to charge principals.  Absent explicit statutory language creating a distinct time limit for charges based on accessory liability, we cannot assume the Legislature intended such a result.  See State v. Brunner, 2014 VT 62, ¶ 11, 196 Vt. 571, 99 A.3d 1019 ("We generally

interpret penal statutes strictly, but not so strictly as to defeat the legislative purpose in enacting the law or to produce irrational and absurd results." (quotation omitted)).

¶ 16.    It is undisputed that, at all relevant times for this case, the limitations period for commencing a prosecution for sexual assault with a child sixteen years or younger, 13 V.S.A. § 3252(a)(3) (2005), was at least six years.[3]  Assuming arguendo that this limitations period could be triggered by the commission of the acts, as opposed to the later reporting of those acts, the limitations period began, with respect to petitioner, in May 2005,[4] the last alleged instance of petitioner's aiding and abetting Hulett to sexually molest K.G.[5]  At the earliest, therefore, the statute of limitations in connection with this instance ran in May 2011.  Whether we look to the original charge against petitioner in December 2008 or the November 2009 amended charge to which she pled, the State's prosecution was within the statute of limitations.

¶ 17.    Petitioner next claims her trial counsel rendered ineffective assistance for failing to file a motion to dismiss the felony accessory charge.  The appropriate standard for reviewing ineffective-assistance-of-counsel claims is whether a lawyer exercised the "degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." Russo v. Griffin, 147 Vt. 20, 24, 510 A.2d 436, 438 (1986) (quotation omitted).  To demonstrate ineffective assistance of counsel, a

---

[3]  Before the trial court the State explained that the version of 13 V.S.A. 4501(c) in effect in December 2008 had a limitations period of six years, which, after amendments effective July 1, 2009, was extended to ten years from the date the offense is reported.  It further explained that pursuant to the retroactivity principle laid out in State v. Petrucelli, 156 Vt. 382, 592 A.2d 365 (1991), the ten-year limitations period applied to petitioner's underlying offense.

[4]  We note that, during the change-of-plea hearing, the State mentioned only the years 2000-2003, while the State's filed information alleges conduct that took place through 2005.  We need not decide what effect, if any, this discrepancy has on the statute-of-limitations issue because petitioner in her brief on appeal concedes that the State's allegation covers 2005.

[5]  The period may have commenced in 2008, when K.G. first reported petitioner's conduct, but we need not decide which is correct because the earliest date is still within the six-year window.

petitioner must show by a preponderance of the evidence that his attorney's performance fell below an objective standard of performance informed by prevailing professional norms; and that there is a reasonable probability that, but for counsel's errors, the proceedings would have resulted in a different outcome. In re Plante, 171 Vt. 310, 313, 762 A.2d 873, 876 (2000); see generally Strickland v. Washington, 466 U.S. 668, 687-94 (1984).

¶ 18. On this issue, petitioner submitted the affidavit of an experienced trial attorney who opined that "[i]t is the standard of professional practice in Vermont to seek the dismissal of charges that are brought in violation of the statute of limitations," and as a result of trial counsel's failure to seek dismissal of the aiding in the commission of a felony charge, petitioner was convicted and sentenced for a crime for which there could be no conviction. He offered no facts or analysis, however, to show that a statute-of-limitations challenge would have had any probability of success had it been raised. As the court noted, the legal expert's affidavit was "truly conclusory" on the issue. On behalf of the State, petitioner's trial counsel submitted his own affidavit to the trial court wherein he asserted he did in fact consider filing such a motion in conjunction with the motion he filed seeking dismissal of the misdemeanor cruelty to child charge but consciously chose not to file the motion because he thought it would not be successful. As it turns out, he was right.

¶ 19. While the court below was rightly "leery" of automatically accepting the trial counsel's assertion that he performed adequately, it correctly concluded that the second element of an ineffective-assistance-of-counsel PCR claim—whether the error of counsel was prejudicial because there was a reasonable probability it could have affected the outcome—had to be resolved in favor of the State. As concluded above, a motion to dismiss on statute-of-limitations grounds would have been unsuccessful as a matter of law. Because the felony accessory-to-sexual-assault charge was timely filed against petitioner, there is no reasonable probability that

8

counsel's failure to file such a motion to dismiss on statute-of-limitations grounds was ultimately prejudicial to petitioner. The State was entitled to summary judgment on this issue.

¶ 20. Finally, petitioner claims that the trial court failed to comply with Vermont Rule of Criminal Procedure 11(f) and establish that a factual basis existed for her guilty plea; therefore, her plea was not voluntary. Petitioner argues that the plea colloquy failed to establish that she shared in a preconceived plan to sexually assault K.G. or intended to facilitate that crime's commission.

¶ 21. Rule 11(f) prohibits a trial court from accepting a guilty plea without first "making such inquiry as shall satisfy it that there is a factual basis for the plea." V.R.Cr.P. 11(f); see also State v. Marku, 2004 VT 31, ¶ 21, 176 Vt. 607 (mem.). "The 'factual basis' requirement reinforces the goal of ensuring knowing and voluntary pleas." State v. Fucci, 2015 VT 39, ¶ 7, ___ Vt. ___, ___ A.3d ___ (quoting In re Stocks, 2014 VT 27, ¶ 13, 196 Vt. 160, 94 A.3d 1143). There is no "particular formula for determining that there is a factual basis for a plea," Stocks, 2014 VT 27, ¶ 15, but the defendant must "admit to and possess an understanding of the facts as they relate to the law for all elements of the charge." Id. ¶ 14 (emphasis omitted) (quotation omitted). "What is principally required . . . is evidence of a specific inquiry by the judge into the factual basis for the plea." Id. ¶ 15.

¶ 22. In this case, the State had to prove that petitioner shared in a prior plan to sexually assault her daughter and that she participated to some substantial measure. See State v. Kemp, 160 Vt. 647, 648, 640 A.2d 1, 2 (1993) (mem.). "[A]iding, for purposes of 13 V.S.A. § 3, is shown by participation in the accomplishment, to some substantial measure, of a preconceived plan with a common criminal objective." State v. Wilder, 2010 VT 17, ¶ 15, 187 Vt. 383, 996 A.2d 174. The intent element of the underlying crime is simply that a sexual act was committed intentionally, and not by accident or mistake, upon a child under the age of sixteen. Petitioner's own conduct in facilitating the sexual assault, and thus participating in its execution, must also

9

have been intentional and not the result of mistake, accident, or inadvertence. See id. ("Accessory liability has a specific intent element: the accessory must have the same intent as the perpetrator of the crime."); see also Kemp, 160 Vt. at 648, 640 A.2d at 2.

¶ 23. Petitioner argues that the colloquy did not elicit facts from petitioner that showed she shared the same degree of intent as Mr. Hulett. She posits that because the court failed to ask her if she had planned or discussed the abuse with Mr. Hulett or encouraged his act, "[a]t most, the court ascertained that [petitioner] was complicit in Mr. Hulett's crime."

¶ 24. At the change-of-plea hearing, the judge read to petitioner the charge of aiding in the commission of a sexual assault, which included the allegation that she assisted or aided Hulett in the sexual assault of her child, and petitioner acknowledged that she understood the charge. The judge further stated: "Now, in connection with this aiding a sexual assault, the State would have to prove that you knew that Mr. Hulett was going to engage in a sexual act with K.G. and that you did something specifically to assist him or to aid him or encourage him to do this." Following this information from the judge, the prosecutor described for the court a factual basis for the charge:

> Ms. Hyde was very, very good friends with Mr. Hulett . . . , and she encouraged him to be in her home, and he would come on Sundays and Mondays. Not only encouraged him to come into her home but to spend the night in her daughter's bedroom, in her daughter's bed with her daughter. And even after DCF got involved and said 'don't do this,' she allowed it to continue and it continued for years.
>
> At one point, she walked into the bedroom and actually saw them having some form of sex and walked back out and did nothing about it. Many people had approached her . . . with concerns that there was sexual activity going on with her daughter, and yet she did nothing to stop it.

With that context, the court returned to the specifics of the felony charge against petitioner and addressed her directly:

10

Court: Okay. So let's take the aiding a sexual assault. We've heard representations here that Mr. Hulett was sharing bedroom with your daughter and that at least on one occasion you opened the door and saw Mr. Hulett engaging in a sexual act with this child. Did that happen?

Defendant: Yes, your Honor.

Court: And after that time did you continue to permit Mr. Hulett to occupy the bedroom with your child?

Defendant: Yes, your Honor.

¶ 25. Although the mens rea element for the aiding charge was not specifically mentioned in the above-quoted exchange, the plea colloquy nonetheless substantially complied with Rule 11(f). Petitioner understood that the charged crime required the State to prove that she knew Hulett was going to engage in a sexual act with K.G. and that she "did something to specifically assist him or to aid him or to encourage him to do this."

¶ 26. "A prior agreement to commit the crime need not be demonstrated by an express agreement, but may be shown by circumstantial evidence of an implied understanding." Kemp, 160 Vt. at 648, 640 A.2d at 2. Further, "[i]t is elementary that a defendant's intent may be inferred from the nature of his acts." Fucci, 2015 VT 39, ¶ 13 (citing State v. Johnson, 2013 VT 116, ¶ 29, 195 Vt. 498, 90 A.3d 874). Here, as the trial court remarked, "after [petitioner] saw a sexual act taking place, certainly she had reason to know at that point that there would be continued sexual activity if she continued to invite [Hulett] to spend time in her daughter's bed." By allowing Hulett to have unfettered and repeated overnight access to K.G. in her bedroom, petitioner not only implicitly gave Hulett permission to sexually assault K.G., but encouraged the activity by telling her daughter to sleep with him and also by providing him with a private location to commit the crime. She understood Hulett was sexually interested in K.G. and would engage in sexual acts with the child when given the opportunity, one of which she witnessed.

11

¶ 27. Petitioner shared a preconceived plan with Hulett and had the requisite intent. See State v. Rooney, 173 Vt. 506, 508, 788 A.2d 490, 492 (2001) (mem.) ("We disagree with defendant that giving permission for an eight year old to be sexually assaulted is not enough of an act to create criminal accomplice liability."). It was not an accident or a mistake that she put her daughter to bed with a man waiting to sexually assault her. For these reasons, the trial court properly granted summary judgment to the State on this claim.

¶ 28. Because we hold that the State was entitled to summary judgment on each of petitioner's three claims, we affirm the trial court's decision.

Affirmed.

FOR THE COURT:

_____
Associate Justice