VERMONT SUPERIOR COURT
Bennington Unit
207 South St
Bennington VT 05201
802-447-2700
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 20-CV-00711



| Morris Nelson v State of Vermont |
|---|

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment  (Motion: 9)
Filer:        Jared Christopher Bianchi
Filed Date:   April 14, 2025

Petitioner, Morris Nelson, filed a petition for post-conviction relief due to ineffective assistance of counsel on charges for aggravated sexual assault, and sexual assault of a minor entrusted to Petitioner's care by authority of law.  Petitioner claims his counsel failed to adequately represent him at trial and defense counsel's conduct fell below the standards of professional competence at two points.  First, defense counsel failed to obtain or present any evidence showing the victim had not been entrusted to Petitioner's care by authority of law, the essential element of the final charge in his case.  Second, defense counsel did not impeach a witness for the prosecution with video evidence from the interview the witness described.  To support these contentions, Petitioner proffered a report by an expert expected to testify at trial. Respondent moved for summary judgment pursuant to Vermont Rule of Civil Procedure 56.  For the reasons stated below, Respondent's motion for summary judgment is granted.

### STANDARD FOR SUMMARY JUDGMENT

In addressing a motion for summary judgment, the Court derives the undisputed facts from the parties' statements of fact under V.R.C.P. 56(c).  Facts in the moving party's statement are deemed undisputed when supported by the record and not controverted by facts in the nonmoving party's statement. *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413.  As this case is one for post-conviction relief, the summary judgement standard is essentially the same as it would be in a civil complaint. *In re Barrows*, 2007 VT 9. ¶ 17, 181 Vt. 283 ("These general rules of summary judgment are applicable to PCR cases.").

Summary judgment under V.R.C.P. 56 is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*  A fact is material when the fact would affect the outcome of a case. *Civetti v. Turner*, 2022 VT 64, ¶ 19, 217 Vt. 411 (quoting *Gates v. Mack Molding Co.*, 2022 VT 24, ¶ 14, 216 Vt. 379).  In determining if there is a genuine issue as to any material fact, the Court "will accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356.  The Court will also give the nonmoving party "the benefit of all



reasonable doubts and inferences." *Id.* However, the nonmoving party may not "rely on bare allegations alone to meet the burden of demonstrating a disputed issue of fact." *Webb v. Leclair*, 2007 VT 65, ¶ 14, 182 Vt. 559 (mem.). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375. Nor may the nonmoving party rely on a dispute over trial strategy to stand in the place of disputed material fact. *Morais v. Yee*, 162 Vt. 366, 371–72, 648 A.2d 405, 409 ("Plaintiffs may rely on affidavits of experts to defeat a summary judgment motion, but the affidavit still must meet the Rule 56(e) requirement that the nonmoving party present specific facts demonstrating a genuine issue for trial."); cf. *Cassani v. Hale*, 2010 VT 8, ¶ 23, 187 Vt. 336 ("Legal conclusions and opinions cannot be the proffered basis for rendering summary judgment."). The facts discussed herein are therefore deemed to be undisputed, except as noted or otherwise qualified.

FACTS

In June 2017, a jury returned a guilty verdict against Petitioner on charges of aggravated sexual assault as part of a common plan or scheme, 13 V.S.A. § 3253(a)(9), sexual assault of a victim under the age of eighteen entrusted to his care by authority of law, 13 V.S.A. § 3252(d), and sexual exploitation of a minor, 13 V.S.A. § 3258(c). *Resp't's Statement Undisputed Material Facts Supp. State's Mot. Summ. J.* at ¶ 1; *State v. Nelson*, 2020 VT 94, ¶ 8, 213 Vt. 368. Petitioner appealed the conviction to the Vermont Supreme Court, claiming 13 V.S.A. § 3253(a)(9) and 13 V.S.A. § 3252(d) were duplicative, and 13 V.S.A. § 3252(d) and 13 V.S.A. § 3258(c) were also duplicative in a different manner. *Nelson*, 2020 VT 94, ¶ 1. Additionally, Petitioner challenged that the element of entrustment "by authority of law" could not be found as there had been no formal transfer of legal decision-making authority. *Id.* The Supreme Court concluded that the 13 V.S.A. § 3258(c) charge placed Petitioner in double jeopardy given the facts in the case and vacated the conviction for sexual exploitation of a minor, while affirming the other two charged counts. *Pet'r's Resp. State's Statement Material Facts* at ¶ 1; *Resp't's Statement* at ¶ 3; *Nelson*, 2020 VT 94, ¶¶ 40–42. The Supreme Court also found Petitioner's interpretation of the necessary standard of proof for entrustment by authority of law to be too narrow, and that a reasonable jury could conclude entrustment occurred based upon the testimonial evidence presented. *Nelson*, 2020 VT 94, ¶¶ 43–50.

These are the facts of the underlying criminal case which are relevant to the ineffective assistance of counsel claims. The police interviewed the victim during the investigation. *Resp't Statement* at ¶¶ 16–20; *Resp't's Ex. 4 Trial Tr.* at 29–31. During the first interview, the victim denied that Petitioner sexually assaulted her. *Resp't's Statement* at ¶ 16; *Resp't's Ex. 4* at 31, 40, 104. From the second interview onward, however, the victim stated Petitioner assaulted her in a variety of locations both in-state and out-of-state. *Resp't's Statement* at ¶ 20; *Resp't's Ex. 4* at 106, 113, 138–39. Respondent called the detective who conducted the first interview, Detective Zink, to testify during trial. *Resp't's Ex. 4* at 25. Detective Zink testified that during the initial interview the victim was confused, but cooperative and open. *Resp't's Statement* at ¶ 16; *Resp't's Ex. 4* at 30. However, as Detective Zink questioned the victim about rumors of a relationship with Petitioner, Detective Zink testified that the victim's demeanor became nervous. *Resp't's Statement* at ¶ 16; *Resp't's Ex. 4* at 30–31. Petitioner's attorney cross-examined Detective Zink but did not attempt to impeach Detective Zink's statements regarding the initial interview. *Resp't's Ex. 4* at 35–38.

As to the other ineffective assistance of counsel claim, the victim testified that New Hampshire's equivalent of the Department of Children and Families[1] had to be involved in allowing her to live at Petitioner's home with himself and his former wife, treating Petitioner and his wife as though they were her "Permanent Caring Adults."[2] *Resp't's Statement* at ¶ 12; *Resp't's Ex. 4* at 77–78, 111; *State v. Nelson*, 2020 VT 94, ¶ 50. A program coordinator at the victim's school testified she believed the state of New Hampshire allowed the victim to meet with Petitioner and his former wife after Petitioner stopped working at the school where he met the victim. *Resp't's Ex. 4* at 50. Petitioner's former wife also testified at trial that the couple met with the victim's caseworker at "New Hampshire DCF" to approve of the living arrangement Petitioner sought. *Resp't's Statement* at ¶ 12; *Resp't's Ex. 4* at 170–71; *Nelson*, 2020 VT 94, ¶ 50. Petitioner's former wife worked for Vermont DCF and testified to the issues involved with acting as caretakers for a child in the custody of another state's child-protection system. *Resp't's Ex. 4* at 170–71; *Nelson*, 2020 VT 94, ¶ 50. She also testified to how Petitioner, the victim and herself had chosen to go into an arrangement with "New Hampshire DCF" where the Petitioner and Petitioner's wife provided the victim with a place to live on certain days of the week as the victim was close to eighteen and would age out of certain child protection services in New Hampshire. *Resp't's Ex. 4* at 170–71; *Nelson*, 2020 VT 94, ¶ 50. Petitioner's attorney moved for a judgement as a matter of law on the basis that there was no evidence of a formal entrustment, nor proof that New Hampshire's DCF had gone through formal proceedings to grant Petitioner and his wife any form of legal custody. *Resp't's Ex. 4* at 185. The trial court denied the motion. *Resp't's Ex. 4* at 188.

Petitioner, through different counsel, appealed the issue that there was a lack of evidence of entrustment to the Vermont Supreme Court. *Resp't's Statement* at ¶ 4; *Nelson*, 2020 VT 94, ¶ 1. The Vermont Supreme Court found that "entrustment by authority of law" within 13 V.S.A. § 3252(d) was intended to be broad enough to encompass situations such as when a state's child protection agency allows someone to act as a caretaker of a child under the agency's custody after, as stated by Petitioner's former wife, meeting with the child's case worker to come up with a plan. *Nelson*, 2020 VT 94, ¶ 49–50. Therefore, testimonial evidence of the kind provided by multiple witnesses throughout the trial was sufficient for a reasonable jury to find that the victim had been entrusted to Petitioner's care by authority of law. *Resp't's Statement* at ¶ 5; *Nelson*, 2020 VT 94, ¶ 50.

*Respondent's Statement of Undisputed Material Facts in Support of State's Motion for Summary Judgment* and related exhibits support these facts. *Petitioner's Response to the State's Statement of Material Facts* admits all the above facts, though Petitioner disputes Respondent's ¶ 30, which states Petitioner's expert "Williams does not state that he employed any data or methodology in his opinion." *Resp't's Statement* at ¶ 30. Petitioner denies this claim by

---

[1] As noted by the Vermont Supreme Court, the agency in New Hampshire which serves the same role as the Department of Children and Families in Vermont is called the Division for Children, Youth & Families. However, the witnesses referred to this agency as "New Hampshire DCF" throughout the trial. 2020 VT 94, n.1.

[2] As noted on appeal in *State v. Nelson*, New Hampshire's Division uses slightly different terminology than used by the witnesses at trial. The status in New Hampshire is "Primary Caring Adult," commonly known as PCAs. 2020 VT 94, n.2.

pointing out that Petitioner's expert detailed all of the data he reviewed and stated that he used his training as a criminal defense attorney and the legal standards set by both the United States Supreme Court and the Vermont Supreme Court to provide his conclusions about the reviewed data. *Pet'r's Resp. State's Statement Material Facts* at ¶ 30, *Resp't's Ex. 6 Report David J. Williams* at ¶ 8. This is a legal dispute over the validity of Attorney Williams' opinion as an expert. These statements raise the question of whether Petitioner's expert relied on data to prepare his report and has some form of methodology. Both of these issues are important as to the admissibility of the expert's opinion. However, the admissibility of Petitioner's expert witness in the immediate matter does not raise a question as to whether Petitioner received ineffective assistance of counsel at trial. Legal disputes are not disputes over material facts for the purposes of summary judgment. Therefore, the case is ready for summary judgment.

## ANALYSIS

To succeed in an ineffective assistance of counsel claim, a petitioner must prove by a preponderance of the evidence that their attorney's actions "fell below an objective standard of performance informed by prevailing professional norms." *In re Hyde*, 2015 VT 106, ¶ 17, 200 Vt. 103. Falling below an objective standard of performance cannot be found merely by an argument that a petitioner's attorney did not follow an effective trial strategy. Any side in a trial may lose a case, even with the best strategy in the given circumstances. The question in Vermont "is whether trial counsel had *any* reasonable strategy and whether they pursued it with adequate preparation and diligence." *In re Dunbar*, 126 Vt. 209, 213, 647 A.2d 316, 320 (1994). A petitioner must also show that this deficient performance reasonably affected the outcome of the case. *In re Russo*, 2010 VT 16, ¶ 16, 187 Vt. 367 ("A PCR court making this inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.") (internal quotation omitted); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

With these standards and the claims of Petitioner in mind, the ultimate issue in this case is whether a different result would have been rendered had defense counsel taken different actions on the two points Petitioner identifies.

Petitioner's first claim is that trial counsel failed to obtain or present evidence that no authority of law, primarily New Hampshire's Division of Children, Youth & Families, entrusted the victim to his care. *Proposed Second Am. Pet. Post-Conviction Relief* at ¶ 13–15. This claim is based upon the previously litigated theory that the element of entrustment "by authority of law" as laid out in 13 V.S.A. § 3252(d) required some proceeding, or entrustment with legal decision-making authority. See *State v. Nelson*, 2020 VT 94, ¶ 43 ("We conclude that the State did prove that complainant was entrusted to defendant's care "by authority of law," and that, in doing so, it was not required to prove that defendant had legal decision-making authority for complainant."). Petitioner states in his petition "Defense counsel's failure to obtain and present evidence *that would disprove one of the elements of Count 2* (sexual assault of a child entrusted to the actor's care by authority of law) fell below reasonable standards of professional competence." *Second Am. Pet.* at ¶ 16 (emphasis added).

The purpose of post-conviction relief is not to re-litigate a case, but correct errors when there has been a serious miscarriage of justice. *In re Hemingway*, 2014 VT 42, ¶ 7, 196 Vt. 384 ("Post-conviction relief is a limited remedy, intended to correct fundamental errors in the judicial process." (internal quotation marks omitted)). This Court will address what remains of the claim outside of the theory of the previous litigation, whether or not counsel fell below the standards of the profession when choosing to challenge this element of the claim through testimonial evidence, and a motion for judgment as a matter of law on the issue.

As the Supreme Court has held that the testimony of the involvement of New Hampshire's Division of Children, Youth & Families in the decision where the victim lived part time with Petitioner was enough to prove the legal element, this Court fails to see what proof Petitioner's defense counsel could have obtained beyond the testimonial evidence to disprove the element. The evidence at trial established the Division met with Petitioner, victim, and Petitioner's former wife to come to an arrangement that was short of formal proceedings. *Resp't's Statement* at ¶ 12; *Resp't's Ex. 4* at 170–71; *Nelson*, 2020 VT 94, ¶ 50. Petitioner does not challenge that such a meeting occurred. Testimony to the fact that the arrangement was informal was elicited and presented to the jury by both Respondent and Petitioner. *Resp't's Ex. 4* at 77, 111, 170-71. The lack of process to transfer the Division's legal authority over the victim to Petitioner and his former wife is not enough to disprove the entrustment element of 13 V.S.A. § 3252(d) in those circumstances. *Nelson*, 2020 VT 94, ¶ 49 ("Nor would they [the statutorily impermissible power dynamics] be dependent on whether defendant was officially designated as a PCA by court order or merely acting as a caretaker pursuant to formal authority from New Hampshire DCF.").

Not being able to disprove an element of a criminal case because the facts fulfill the element is not below the reasonable standards of a defense attorney's profession. Nor is it a fundamental error in the judicial process. Defense counsel pursued the theory that the language of the charging statute required proof of some form of proceeding or transfer of decision-making authority using testimonial evidence, moved for judgment as a matter of law on the matter, and defense counsel's actions maintained Petitioner's ability to appeal on that issue. This does not fall below the reasonable standards of a defense attorney's profession.

Petitioner's second claim is that trial counsel did not impeach Detective Zink regarding his characterization of his initial interview with the victim. *Second Am. Pet.* at ¶ 22. To support this claim, Petitioner retained the use of an expert witness, Attorney Williams, who prepared a report detailing how the expert believed defense counsel's actions fell below the acceptable standard of the profession. See *Resp't's Ex. 6; Pet'r's Attach. Ex. 6 CV David Williams*. Even giving Petitioner's expert's report the benefit of all doubts and reasonable inferences, the report only details the various ways in which Attorney Williams would have chosen to pursue a more aggressive trial strategy. *Resp't's Ex. 6* at 8–13. An ineffective assistance of counsel claim may not rest on merely questioning trial strategy. *In re Dunbar*, 126 Vt. 209, 215 (1994) ("Although other counsel might have tried the case differently, the critical evidence with which defendant is concerned was put before the jury, albeit not with the emphasis he now argues.").

Review of the transcripts of the trial show defense counsel pursued many of the strategies outlined by Attorney Williams, if in different ways. Compare, e.g., *Resp't's Ex. 4* at 112 (cross

examination of the victim about inconsistent interviewing statements) with *Resp't's Ex. 6* at 10 (discussing the ways in which video recordings could have been used to show the victim made inconsistent interviewing statements). It appears that defense counsel was following a particular trial strategy, one to cast doubt on the non-consensual nature of the Petitioner's actions and inform the jury that no proceeding occurred to transfer legal decision-making authority over victim to Petitioner. Both of these strategies failed to convince the jury, but that is not a lack of strategy, or ineffective assistance.

Additionally, even assuming defense counsel's actions fell below the professional standard for defense counsel, Petitioner fails to show how impeaching one interviewing detective would fundamentally alter the outcome of this case. "In determining whether petitioner was prejudiced, we must take into account all of the evidence before the jury." *In re FitzGerald*, 2020 VT 14, ¶ 50, 212 Vt. 135. Determinations of credibility are left to the jury, who have heard more than one witness in isolation. *State v. Norton*, 134 Vt. 100, 103, 353 A.2d 324, 326 (1976) ("The credibility of the witnesses and the weight to be given their testimony is the sole province of the jury."). Respondent put two detectives on the stand, the second being the detective who conducted the second interview with the victim, as well as the victim herself. The jury would still hear the evidence of the first interview from the victim, who testified to her side of the interactions, and why her statements were inconsistent at the interview, and the testimony of the second interviewing detective. After impeachment, the jury still would have the testimony of the first detective with the knowledge that his characterizations of his interview with the victim might have been inconsistent—or possibly consistent, depending on the jury's perception—with the recorded interview. Given that there were multiple sources of evidence about the interactions with the interviewing officers, Petitioner cannot prove that the jury would have decided differently, even had defense counsel impeached one of the interviewing officers.

ORDER

For the foregoing reasons, Respondent's Motion for Summary Judgment is granted.

**Signed electronically September 25, 2025 pursuant to V.R.E.F 9(d).**

_____

**David Barra**
**Superior Court Judge**