NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 10

No. 2018-347

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Donald Bouchard | October Term, 2019 |

Kevin W. Griffin, J.

James Pepper, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Burgess, J. (Ret.)[1] and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.    **ROBINSON, J.**    Defendant, who pled guilty to two sex offenses, challenges several special sex-offender probation conditions. We uphold two conditions; strike three conditions; and strike and remand two conditions for further findings and clarification.

¶ 2.    Defendant was convicted of two counts of lewd and lascivious conduct, and one count of unlawful restraint in the second degree. The offending conduct involved his niece and nephew. According to the State's affidavit of probable cause, defendant's niece alleged that when defendant hugged her, he would " 'grab [her] butt' and kiss her on the mouth" and would

---

[1] Justice Burgess was present for oral argument but has since recused himself.

sometimes "linger too long." She reported that defendant would enter her room when he believed she was asleep and would "play with [her] butt," including grabbing at and rubbing it, for several minutes at a time. This behavior began when niece was in "7th or 8th grade," and stopped an indeterminate amount of time later, when she "got older" and started rolling over to "get him to stop." Defendant's nephew also reported that defendant would " 'grab' and 'squeeze' his 'butt' when saying hello," and had also touched nephew's thigh and penis over his clothing. Defendant would grab nephew's arm and bring him into the bedroom, where he would "wrestle" with him, cover his mouth, and touch him in "awkward" ways. Defendant put nephew in sexual positions and touched him through his clothes. This behavior began when nephew was ten years old and had most recently occurred when nephew was thirteen years old. During his plea colloquy, defendant admitted that he engaged in some of this behavior to "appeal to [his] passions or sexual urges." He does not challenge his convictions or the underlying facts on appeal.

¶ 3.     The plea agreement contemplated a total sentence of 118 to 120 months, all suspended except for thirty days, and a ten-year term of probation. It left the State free to argue for all special conditions of probation recommended by the Department of Corrections (DOC) in the presentence investigation report (PSI). The PSI documented defendant's scores on two instruments that estimate the risk for sexual recidivism. In one, he fell in the moderate-low risk group, and in the other, the low risk group. Of individuals scoring similarly on the two instruments, an average of 2.2% were charged with a new sexual offense within five years of placement in the community. The PSI recommended a host of special sex-offender conditions to which defendant objected.

¶ 4.     At the sentencing hearing, the court imposed the agreed-upon sentence. The State presented no evidence in support of any of the contested probation conditions. The trial court expressed its concern about defendant's ability to complete the sex-offender treatment program, and told defendant that "if you don't complete the program and a violation of probation is filed

2

and your probation is revoked, there is no room in the sentence that you've negotiated with your attorney for any other programming. It really is as close to a flat ten-year sentence as I've ever seen." The court imposed various probation conditions, including the "sex [-] offender special conditions of probation" at issue on appeal.

¶ 5. Those conditions are: condition 36, that defendant may not purchase, possess, or use pornography or erotica, or go into adult sex shops or similar establishments; condition 38, that upon reasonable suspicion of a probation violation, he must give his probation officer search-and-seizure privileges to search without a warrant and confiscate "drugs, pornography, erotica, digital media, computer, or any other item which may constitute a violation of [his] conditions;" condition 40, that he must allow his probation officer to monitor his computer and internet usage, including through the use of software for monitoring sex offenders; condition 41, that he may not initiate or maintain contact with persons under the age of eighteen, unless otherwise approved in advance and in writing by his probation officer; condition 42, that he may not work or volunteer for a business or organization that primarily provides services to persons under the age of either sixteen or eighteen;[2] condition 31, that he notify his probation officer of a change of contact information within forty-eight hours; and condition 37, that he may not access or loiter "in places where children congregate, i.e., parks, playgrounds, schools, etc.," unless otherwise approved in advance by his probation officer.

¶ 6. We review the trial court's imposition of probation conditions for an abuse of discretion. State v. Lumumba, 2018 VT 40, ¶ 31, 207 Vt. 254, 187 A.3d 353. As set forth more fully below, we strike the pornography condition because, on the record presented, there is no evidence that it is reasonably related to defendant's rehabilitation or necessary for public safety;

_____

[2] As explained below in section IV.A, it is not clear whether conditions 41 and 42, relating to defendant's contact with minors, apply to minors under the age of eighteen or only those younger than sixteen. See infra, ¶¶ 29-30.

and strike the broad warrantless-search condition and the computer-monitoring condition because they are not narrowly tailored to promote a balance between the State's non-law-enforcement goals and defendant's privacy rights. We remand the two conditions limiting contact with minors for clarification as to the age restrictions and the rationale behind them. We uphold the conditions prohibiting defendant from accessing or loitering in places where children congregate, and requiring defendant to give his probation officer notice within 48 hours of a change in contact information.

## I. Pornography

¶ 7.    Condition 36 provides that defendant "may not purchase, possess or use pornography or erotica [and] may not go to adult bookstores, sex shops, topless bars, etc." On appeal, defendant argues that this condition is neither reasonably related to his rehabilitation nor necessary for public safety. We agree that this condition is not supported by the evidence presented by the State, and strike the condition.

¶ 8.    While trial courts have broad discretion in imposing probation conditions, see Lumumba, 2018 VT 40, ¶ 32, they may only impose conditions that are "reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so." 28 V.S.A. § 252(a). Specifically, where a condition prohibits the offender from engaging in otherwise legal behavior, the condition must be "reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety." Id. § 252(b)(18). In the context of sex-offender special conditions, we have emphasized that "the statute requires more than the bare recitation that a defendant is a sex offender and that incursions onto his liberty are justifiable on that basis alone." State v. Cornell 2016 VT 47, ¶ 7, 202 Vt. 19, 146 A.3d 895; see also Lumumba, 2018 VT 40, ¶ 33.

¶ 9.    Our decision in Lumumba, 2018 VT 40, ¶ 37, guides our analysis in this case. In Lumumba, we struck an identical condition because there was no evidence that it was "reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety." Id. ¶ 32

4

(quoting 28 V.S.A. § 252(b)(18)). We noted that the State had introduced no evidence regarding the defendant's individual history or behaviors, but instead relied on general assertions "that this was a standard condition for sex offenders, and that pornography was seen as a step to reoffending." Id. ¶ 36. The State did not provide "competent expert testimony in support of the blanket assertion that the condition is necessary in all cases involving offenders designated as 'sex offenders.'" Id.

¶ 10. Likewise, the court in this case made no finding, and the State presented no evidence, that pornography was related to defendant's offense, his individual history, or his behaviors. Nor did the State present any evidence that the condition is generally necessary for the rehabilitation of all individuals convicted of any crime categorized as a sex offense. See id. ¶ 33 ("[The State] offered no expertise to support the assertion that the conditions were necessary in all cases involving sex offenders".). Instead, the court imposed the condition because it is an "integral part of the treatment program" required pursuant to another condition. The court also explained, "I want to be as specific as I can for [defendant] to understand that he can't be doing that again . . . he's negotiated a nine-year-and-ten-month to ten-year sentence to serve, and so I want to be extra careful that he understands what's going to happen if he violates these conditions."

¶ 11. The fact that the pornography condition is part of the sex-offender treatment program defendant is otherwise required to complete is not sufficient to support the condition for several reasons. First, in Lumumba, we rejected the notion that, absent competent evidence that the condition is reasonably related to defendant's rehabilitation, a court can rely on the bare fact that the probation condition is consistent with a rule of a required sex-offender treatment program in imposing a condition under § 252(b)(18). See id. ¶ 29. Second, although the court referred to defendant's treatment program as "long-term sex-offender treatment," it did not suggest that defendant's treatment would last for the duration of his probation. In imposing the pornography condition, the court prohibited defendant from engaging in otherwise legal behaviors that were not

5

related to his crime, not only for the period he was in treatment, but for his entire ten-year period of probation. Without any credible evidence suggesting that such a condition is reasonably related to defendant's rehabilitation apart from the treatment program, or necessary to protect the public, we must strike this condition.[3]

## II. Warrantless Search

¶ 12.    Condition 38 requires defendant to "give [his] Probation Officer or designee upon reasonable suspicion of a violation of probation search and seizure privileges to search without a warrant and confiscate drugs, pornography, erotica, digital media, computer, or any other item which may constitute a violation of [his] conditions." At sentencing, defendant objected that this condition is "a pretty broad blanket general warrant," and that "the probation officer would at least need probable cause to search any of the items." The State said, "we would request the condition as written, especially if the court is imposing the pornography condition." The court added a reasonable-suspicion requirement to the condition, but otherwise imposed it as proposed. On appeal, defendant contends that the broad search condition violates Chapter I, Article 11 of the Vermont Constitution.

¶ 13.    We strike condition 38 because Article 11 requires that probation conditions authorizing warrantless searches like this one be narrowly tailored to promote a State interest strong enough to outweigh a probationer's privacy interests; in the absence of a condition prohibiting adult pornography, the broad warrantless search condition here, even subject to a "reasonable suspicion" threshold, is not sufficiently narrowly tailored.

---

[3]    We note that this decision deals solely with a freestanding probation condition prohibiting otherwise-lawful conduct. We express no opinion about whether a sex-offender treatment program, pursuant to a condition requiring such treatment, may include an expectation that participants abstain from pornography. Nor do we mean to suggest that a probation condition like condition 36 could never be found to promote rehabilitation or public safety. We simply conclude in this case that the State has not shown such a nexus.

¶ 14. Under Article 11, "the State may depart from the warrant and probable-cause requirements 'only in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " State v. Bogert, 2013 VT 13A, ¶ 17, 197 Vt. 610, 109 A.3d 883 (quoting State v. Berard, 154 Vt. 306, 310-11, 576 A.2d 118, 120-21 (1990)). In such cases, we apply a balancing test "to identify a standard of reasonableness, other than the traditional one, suitable for the circumstances." Id. (quoting Berard, 154 Vt. at 311, 576 A.2d at 121). In particular, if we find a special need for a warrantless search distinct from a law-enforcement need, we "turn to a balancing of the competing public and private interests at stake." Id. (quoting State v. Medina, 2014 VT 69, ¶ 14, 197 Vt. 63, 102 A.3d 661).

¶ 15. That probation conditions serve a special need apart from law enforcement, and thus satisfy the first condition for an exception to the Article 11 warrant requirement, is well established. See, e.g., Bogert, 2013 VT 13A, ¶ 18 ("In Lockwood, we recognized that 'the special needs of the state in administering probation' allow a departure from the warrant and probable cause requirements, and require a balancing of probationers' rehabilitative needs, concerns for protection of the community, and probationers' Article 11 interests." (quoting State v. Lockwood, 160 Vt. 547, 556, 632 A.2d 655, 661 (1993))). The more substantial question here is whether the "reasonableness" balancing test supports the condition in this case.

¶ 16. In applying the balancing test in similar cases, we have held the State must demonstrate that a warrantless incursion on a probationer's rights is narrowly tailored to promote the government interests justifying the incursion. Cornell, 2016 VT 47, ¶ 38. Specifically, in reviewing a warrantless search condition similar to the one at issue here, we concluded that, in order to satisfy the balancing test, a warrantless search condition must require at least reasonable suspicion and must be "narrowly tailored to fit the circumstances of the individual probationer."

7

Lockwood, 160 Vt. at 559, 632 A.2d at 663 (citing Griffin v. Wisconsin, 483 U.S. 868, 875 (1987)).

¶ 17.   We have recognized two ways in which a search-and-seizure condition can be sufficiently narrowly tailored to satisfy Article 11.  First, we have found a search condition to be narrowly tailored where it "authorizes a search only for contraband—that is, items defendant is prohibited from possessing under the conditions." Cornell, 2016 VT 47, ¶ 39.  Such a condition may not include as contraband items that a defendant has a legal right to own. Id. ¶ 40 (amending search-and-seizure condition to remove computers and digital media where defendant was no longer prohibited from possessing either).  Second, we have found that a "broad general search authorization" was permissible in special circumstances, where the State could show an extraordinary probationary need for warrantless searches. Id. ¶ 30.  Specifically, in Lockwood, the combination of defendant's developmental delays and sexual deviancy resulted in "compulsive sexual behavior without awareness of the consequences of this behavior," and therefore an unusually high risk of recidivism. Lockwood, 160 Vt. at 557, 632 A.2d at 662.  In that context, we did not suppress the fruits of a warrantless search, conducted upon reasonable suspicion pursuant to a relatively broad warrantless search condition.  By contrast, in State v. Moses, we struck a probation condition authorizing a broad warrantless search because the condition was not "based on findings that set a proper balance between [the] probationer's privacy rights and the state's special needs and [was] not narrowly tailored to reflect that balance."  159 Vt. 294, 305, 618 A.2d 478, 484 (1992) (noting that "a 'necessary' search is not always a reasonable one").

¶ 18.   Here, none of the specific items named in the warrantless-search condition are contraband.  Condition 36 prohibits defendant from accessing pornography and erotica, so if we had sustained that condition, it might have justified a condition permitting warrantless searches for those items based upon reasonable suspicion.  But because we strike condition 36, pornography is no longer contraband such that the State has the right to search for it based on reasonable suspicion.

8

See Cornell, 2016 VT 47, ¶ 40 (striking condition authorizing warrantless search for computer and digital media for same reason). Similarly, there is no condition prohibiting defendant from possessing legal drugs, and there was no evidence that defendant was at risk of using illegal drugs such that the State's interest in promoting defendant's rehabilitation and public protection outweigh defendant's privacy interests. Finally, the court did not impose any conditions prohibiting defendant from owning a computer or accessing the internet. Because defendant is permitted to own computers and digital media, these items are not contraband.

¶ 19. If we struck all of the specific targets of a potential warrantless search in condition 38, we would be left with only the residual category of "any other item which may constitute a violation of [defendant's] conditions." The condition would be comparable to the one we struck in Moses allowing "enforcement of the conditions of probation through 'search and investigation without warrant when necessary.'" Moses, 159 Vt. at 301, 618 A.2d at 482. Just like the condition in Moses, the remaining condition would not "provide guidance as to when the probationer may be searched without a warrant." Id. at 305, 618 A.2d at 484. Moreover, the State has not presented any evidence that defendant in this case presents particularly challenging penological needs, like the probationer in Lockwood, such that the broader search authorization satisfies the balancing and narrow tailoring requirements of Article 11. As noted above, the PSI reflects that the risk of defendant committing further sexual offenses is relatively low. For these reasons, we strike Condition 38 in its entirety.[4]

---

[4] Because we decide that the condition must be struck on Article 11 grounds, we need not consider whether 28 V.S.A. § 252 provides an independent basis to strike or limit the condition. There may be significant overlap between the constitutional balancing test and the statutory "reasonably necessary" standard; however, we need not decide here whether the statutory and constitutional analyses will invariably reach the same result.

9

### III. Computer Monitoring

¶ 20.    Condition 40 provides that defendant "will allow [his] Probation Officer or designee to monitor [his] computer/internet usage, to include, through the use of specific software for monitoring sex offenders." He must also pay for charges associated with the monitoring.[5] On appeal, defendant argues that this condition is unrelated to his rehabilitative needs or public safety, infringes on his Article 11 and Fourth Amendment privacy rights, and constitutes an unlawful delegation to the probation officer to choose the monitoring method.

¶ 21.    We strike the condition. For the purposes of 28 V.S.A. § 252(a) and Article 11, defendant's rehabilitative needs and the need to protect the public may justify some form of monitoring. But "monitoring" takes a wide range of forms, and the condition here is not sufficiently well defined and narrowly tailored to comply with § 252(a) and Article 11.[6] Because

---

[5] Defendant does not currently own a computer, but the condition will apply if he gets one in the future.

[6] In State v. Cornell, we upheld a monitoring condition like this, but imposed a "reasonable suspicion" threshold requirement as a prerequisite to the monitoring. 2016 VT 47, ¶ 45. In that case, the defendant challenged a probation condition that prohibited him from possessing a computer at his residence and from accessing the internet at his place of employment or anywhere else unless approved in advance by his probation officer. It also authorized the defendant's probation officer to monitor his computer and internet usage, including through the use of specific software for monitoring sex offenders. We concluded that the prohibition against possessing a computer and accessing the internet was overbroad and disconnected from the defendant's original offense, but kept in place the portion of the challenged condition allowing his probation officer to monitor his computer and internet usage—adding a "reasonable suspicion" requirement to the monitoring provision. Id. ¶ 45. We concluded that this amended condition "better reflects a balance between the State's substantial interest in supervising defendant's computer use and defendant's privacy rights, which, while reduced on account of his probationary status, were not all together forfeited" by reason of his conviction. Id. Our decision in Cornell validates the conclusion that we reach here—that a monitoring condition may in some cases promote rehabilitation and public safety; it also illustrates that even so, such conditions must be narrowly tailored—in that case with a "reasonable suspicion" requirement that essentially allowed "monitoring" of the defendant's computer and internet use only upon reasonable suspicion. However, the defendant's appeal in that case focused on the validity of the restrictions on the defendant's computer and internet access; he did not argue, as does defendant in this case, that the monitoring condition was unduly intrusive or overbroad. Brief of Appellant, State v. Cornell, 2016 VT 47 (No. 2012-400), 2015 WL 6182447, at *31-32. For that reason, Cornell provides limited guidance for this issue.

we have grounded our decision in § 252(a) and Article 11, we need not resolve defendant's Fourth Amendment challenge. However, we note that our analysis under state law is consistent with how many federal courts have analyzed monitoring conditions under federal statutory law and the Fourth Amendment.

¶ 22. The framework for determining whether the condition complies with § 252(a) and Article 11 is as set forth above. The condition comports with the statute's requirements if "the court in its discretion deems [the condition] reasonably necessary to ensure that [defendant] will lead a law-abiding life or to assist [him] to do so." 28 V.S.A. § 252(a). Insofar as the provision authorizes a warrantless search in the form of computer monitoring, to satisfy Article 11 it must be narrowly tailored to serve a governmental interest that outweighs the infringement of defendant's privacy associated with the monitoring. See supra, ¶ 16. For the purpose of both analyses, we must understand and evaluate, among other things, the State's interest in imposing the condition.

¶ 23. At trial, the State offered two reasons for the condition: first, it is "necessary to monitor the pornography prohibition," and second, access to the internet would give defendant "arguably . . . more access to children than going to parks or places where kids congregate in person." The first rationale no longer applies, because we strike the pornography prohibition. But defendant is prohibited from maintaining contact with children under the age of sixteen (and perhaps minors under the age of eighteen, as we note in § IV.A below). For that reason, a computer-monitoring condition tailored to enforcing this prohibition may be reasonably necessary to ensure that defendant will lead a law-abiding life, 28 V.S.A. § 252(a), and could potentially pass muster under Article 11.

¶ 24. Whether it does satisfy the respective requirements of § 252(a) and Article 11 will depend on the strength of the State's interest compared to the intrusiveness of the condition—a consideration that will turn in part on how narrowly tailored the condition is. In this case, the

11

government interest in defendant's rehabilitation and public protection is outweighed by the intrusion on defendant's privacy interests. There is no evidence that defendant's offense was related to computers or the internet, or that he is at a high risk of violating his conditions of probation through online activity. The impact of the monitoring condition on defendant's privacy interests, on the other hand, could be quite significant. See In re Search Warrant, 2012 VT 102, ¶ 58, 193 Vt. 51, 71 A.3d 1158 (noting that search of personal computer could allow probation officers access to virtually "every aspect of a citizen's personal life"). As written, the condition gives defendant's probation officer unconstrained access to defendant's computer, with no description of the method of monitoring, the scope of the monitoring, or the threshold requirements, if any, for conducting the monitoring.[7]

¶ 25. And there's the rub: "monitoring" could describe a wide range of things, and it is impossible to tell here how great an invasion of defendant's privacy the monitoring software would represent. Evaluating the constitutionality of a computer-monitoring condition "is fundamentally a question of technology." United States v. Balon, 384 F.3d 38, 45 (2d Cir. 2004). For instance, less invasive monitoring techniques could include "software that alerted a probation officer only when [a probationer] was engaging in impermissible communications." United States v. Lifshitz, 369 F.3d 173, 192 (2d Cir. 2004). On the other hand, more invasive technology might "record any and all activity on computers . . . including the capture of keystrokes, application information, internet use history, email correspondence, and chat conversations." United States v. Shiraz, 784 Fed.App'x 141, 142 (4th Cir. 2019) (per curiam). The Second Circuit has described in detail how monitoring programs differ:

> [T]he varieties of products and techniques currently available diverge vastly in their breadth, and in their implications for

---

[7] The court noted that "I think what they've generally done is simply put a simple software program on the computer which actually allows them to see where he's been going or not going." Although the court described its understanding of the monitoring technology used by the DOC, the condition itself does not specify any particular type of monitoring.

12

computer users' privacy. . . . First, some monitoring uses software installed on an individual's personal computer, whereas other monitoring relies on records from the Internet Service Provider ("ISP"), through whom an account user's requests for information or e-mails may be routed. The former type of monitoring might be more conducive to investigating all of a probationer's computer-based activities, including those performed locally without connection to the Internet or any network—such as . . . word processing activities or [business-related activities]—whereas the latter would be limited to transmissions mediated by the ISP. Second, some software focuses attention upon specific types of unauthorized materials, whereas other kinds monitor all activities engaged in by the computer user. These distinctions may be material to determining whether the scope of the monitoring condition's infringement on privacy is commensurate with the 'special needs' articulated in this case.

Lifshitz, 369 F.3d at 191 (footnotes omitted). In another case, the Second Circuit noted that it was unclear "whether the monitoring displays in real time on the probation officer's computer screen the full content appearing on the user's screen or merely a log describing that content." Balon, 384 F.3d at 43. In some cases, monitoring may be completed not by the probation officer, but by a third-party organization, which notifies the probation officer only if it detects contraband. See United States v. Browder, 866 F.3d 504, 512 (2d Cir. 2017).

¶ 26. Because the condition here on its face authorizes limitless monitoring of defendant's computer and internet use, it is not narrowly tailored to ensure a permissible balance between the government's interests and defendant's privacy rights, and we cannot conclude that it is "reasonably necessary" to help defendant lead a law-abiding life.[8] On its own, "the term 'monitoring' is broad, encompassing some methods that are quite intrusive and therefore, perhaps, problematic." United States v. Quinzon, 643 F.3d 1266, 1271 (9th Cir. 2011); see also Shiraz, 784 Fed.App'x at 145 (condition allowing monitoring of "any and all activity on computers" lacked "any tailoring to avoid an overbroad interpretation"). Given the universe of possible computer-

---

[8] As with Condition 36, we need not decide whether the § 252(a) analysis and the Article 11 analysis are coextensive. In this case, the record is too bare, and the condition too broad and unconstrained, to satisfy either set of requirements if they differ.

monitoring techniques, in order to be narrowly tailored to the State's rehabilitation and public-protection goals, the condition must specify what digital materials the officer may monitor and how. This will likely require the State to present evidence about the monitoring process it seeks to use so that the court can understand the scope of the monitoring; the likelihood of detecting private information beyond that reasonably subject to the monitoring condition; the extent to which the technology can be customized to the narrow needs of a particular case; and other factors impacting the balancing and narrow-tailoring analyses. While the State has demonstrated some basis for monitoring some of defendant's online activity, it has not demonstrated a need sufficient to justify the most intrusive monitoring programs, or that its proposed monitoring is narrowly tailored to the State's legitimate needs. And the trial court has not narrowly tailored a condition consistent with the above requirements. Therefore, the condition runs afoul of § 252(a) and Article 11.[9]

¶ 27. In light of our analysis under state law, we need not conduct a full Fourth Amendment analysis of the same monitoring condition; however, we note that our analysis squares with that of many federal courts applying federal law. Decisions from the Second and Ninth Circuits convince us that, like Article 11, the Fourth Amendment also requires narrow tailoring in the context of computer monitoring conditions. See United States v. Sales, 476 F.3d 732, 737 (9th Cir. 2007) ("A computer monitoring condition in some form may be reasonable. However, to

---

[9] Because we strike the condition on the above grounds, we do not separately address defendant's argument that the condition unlawfully delegates authority to the probation officer to determine the manner and scope of the monitoring. See, e.g., State v. Putnam, 2015 VT 113, ¶¶ 68-73, 200 Vt. 257, 130 A.3d 836 (holding that probation condition that gave probation officer broad authority to decide whether and what type of counseling or training defendant was required to undergo amounted to unlawful delegation of authority to probation officer). We note, though, that a narrowly tailored monitoring condition must identify the target content of the monitoring; the threshold triggers, if any, to the monitoring; and the scope and limits of the monitoring. For that reason, a permissible monitoring condition would not leave the method of monitoring to the officer's unconstrained discretion, and would not constitute an overbroad delegation of authority to the probation officer.

comply with the Fourth Amendment, it must be narrowly tailored—producing no greater deprivation of liberty than is reasonably necessary."); Lifshitz, 369 F.3d at 190 ("We must assess the necessary scope of the monitoring condition in light of the 'special needs' articulated in this particular case . . . . In order to comply with the requirements of the Fourth Amendment, the monitoring condition must be narrowly tailored."); see also Quinzon, 643 F.3d at 1272-74 (interpreting condition to implicitly include narrow-tailoring limitations, including that officer may only monitor internet-based activities). Just as a broad monitoring authorization is not narrowly tailored for the purposes of Article 11, it also poses a problem under the Fourth Amendment. A general monitoring authorization, such as the one present here, "gives no indication as to what kinds or degrees of monitoring are authorized," Sales, 476 F.3d at 737, and therefore may be "overbroad," Lifshitz, 369 F.3d at 193. Accordingly, our state law analysis, though grounded in Article 11 and § 252(a), is consistent with at least some federal case law.

## IV. Contact with Minors

¶ 28. Conditions 41 and 42 relate to defendant's contact with minors. Defendant argues that these conditions are unrelated to his offense, his rehabilitation, or public safety to the extent they prevent him from being in contact with sixteen- and seventeen-year-olds. He also argues that the condition relating to his employment or volunteer opportunities is impermissibly vague. As explained below, the record is not entirely clear as to whether the court did, in fact, impose conditions restricting defendant's contact with sixteen- and seventeen-year-olds, and we remand for clarification. If the court does prohibit defendant from contacting sixteen- and seventeen-year-olds, it must provide a rationale for restricting otherwise lawful behavior. In any event, we conclude that the condition concerning employment and volunteering with organizations that primarily serve underage people is not impermissibly vague.

## A. Confusion as to Scope of Contact Restrictions

¶ 29.    The PSI recommended a restriction prohibiting defendant from initiating or maintaining contact with people under the age of eighteen, or working or volunteering for an entity that primarily serves people under the age of eighteen, unless approved in advance by his probation officer.  At the sentencing hearing, as the trial court reviewed the PSI and its recommendations, defendant's counsel stated that he "would not object to sixteen.  I do object to eighteen."  The court stated, "I am going to impose eighteen."

¶ 30.    However, in the probation order signed by the court, both conditions restrict defendant's contact with children under the age of sixteen.  Condition 41 reads that defendant "may not initiate or maintain contact with males or females under the age of 16, unless otherwise approved in advance and in writing by your Probation officer or designee.  Said contact may require being accompanied by a responsible adult, approved by your Probation Officer or designee."  Condition 42 reads that defendant "shall not work or volunteer for any business or organization that primarily provides services to persons under the age of 16 years, unless otherwise approved in advance[] by your Probation Officer or designee."

¶ 31.    We cannot fully reach the merits of this argument because there is an inconsistency in the record with regard to these conditions.  Based on the general principle that an oral pronouncement at sentencing trumps a subsequent written sentencing order in the event of a conflict, defendant understands the condition to prohibit contact with people under the age of eighteen.  See, e.g., United States v. Washington, 904 F.3d 204, 208 (2d Cir. 2018) (stating that because defendant must be present at pronouncement of sentence, "after a sentence has been pronounced, the written judgment may clarify the terms of the spoken sentence, but if there is a substantive discrepancy between the spoken and written versions of a defendant's sentence, the spoken version ordinarily controls." (citation omitted)); see also United States v. Gagnon, 470 U.S. 522, 526 (1985) (stating that "right to presence is rooted" in Confrontation Clause, but also

protected by Due Process Clause).  But we have some question as to whether the court's statement that it was "going to impose eighteen" amounted to an oral pronouncement of sentence on that condition.  And we have not considered whether a prohibition reflected in an oral pronouncement but not in the written probation order is enforceable in light of our decision in State v. Hemingway, 2014 VT 48, ¶ 11, 196 Vt. 441, 97 A.3d 465 (holding that trial court's failure to provide defendant a certificate detailing the conditions of probation rendered the condition unenforceable).

¶ 32.    For these reasons, we remand to allow the trial court to clarify these two conditions. If the trial court intended for the age minimum to be eighteen, it should amend the probation order accordingly.  See V.R.Cr.P. 36 (authorizing trial court to correct clerical mistakes in judgments, orders or other parts of the record).  If it intended for the age minimum to be sixteen, then in the revised probation order it signs to reflect the deletions required by this decision, it should leave the conditions intact, as written.

## B.  Merits of Defendant's Challenges

¶ 33.    If the trial court does correct the order to restrict defendant's access to all minors under the age of eighteen, it must state its rationale for doing so.  Both condition 41 and condition 42 prohibit defendant from engaging in legal behavior.[10]  Therefore, under § 252(b)(18), the condition must be "reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety."  It is especially important that the condition be only as restrictive as necessary,

---

[10] Defendant points out that "[t]here is nothing unlawful about [defendant] associating with or having platonic or even romantic relationships with sixteen- and seventeen-year-old individuals."  To the extent defendant makes a facial challenge to the condition based on the age of consent, we reject his argument.  It is true that in Vermont, an adult can engage in consensual sex with sixteen- and seventeen-year-olds in some circumstances.  See 13 V.S.A. § 3252(d). However, such conduct is criminal in circumstances where the minor may be more vulnerable to coercion: where the minor is entrusted to the adult's care by law or is a child or grandchild of the adult.  See id.  While respecting the autonomy of sixteen- and seventeen-year-olds, this law protects them by prohibiting conduct by adults that may jeopardize their well-being.  On the same basis, a trial court may prohibit a sex offender from contacting sixteen- and seventeen-year-olds, when such a condition is reasonably related to their rehabilitation or necessary for public safety.

since it implicates defendant's First Amendment right to association. We have noted that "where fundamental rights are involved, special care should be used to avoid overbroad or vague restrictions." State v. Whitchurch, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990). The trial court's only explanation for applying this condition to minors under the age of eighteen was that "[u]ntil he's involved in active treatment, given his age, I just don't see it in any way, shape, or form being appropriate for him having access or contact with sixteen- or seventeen-year-olds at this point." It is unclear whether the trial court was basing its decision on defendant's need for rehabilitation, concerns about public safety, or a general assessment of propriety of people defendant's age associating with sixteen- and seventeen-year-olds. While the trial court may have an adequate rationale in this case, it must state its rationale explicitly.

¶ 34. In any event, we reject defendant's argument that condition 42, preventing him from working for any organization that "primarily provides services to persons under the age of 16 years" (or, per the above discussion, 18 years) unless approved by his probation officer, is fatally vague and delegates too much authority to the probation officer. When defendant voiced these concerns at sentencing, the trial court reasoned that the intent of the condition was to prevent defendant from working at "ABC Daycare" or any workplace that was designed to primarily serve minors. Defendant now argues that while he is clearly prohibited from working at a daycare, it is unclear whether he could work at a library, movie theater, supermarket, or fast-food restaurant. See State v. Rivers, 2005 VT 65, ¶ 13, 178 Vt. 180, 878 A.2d 1070 (listing these locations as places where children are regularly present). The State responds that the language of the condition puts defendant on notice of what would constitute a violation. In the State's view, none of the examples listed as questionable by the defendant would constitute a violation of probation unless he worked for a business that specialized in serving minors rather than the general public.

¶ 35. A probation condition must be "precise enough to allow [its] implementation but not so broad that probation officers are effectively establishing the probationary terms." State v.

18

Putnam, 2015 VT 113, ¶ 64, 200 Vt. 257, 130 A.3d 836. The degree of discretion given to a probation officer must be "limited in relation to the court's ability to anticipate the relevant issues and construct a proper condition." Id. (quotation omitted).

¶ 36. We agree with the State that this condition on its face adequately puts defendant on notice as to what would constitute a violation, and does not delegate too much authority to his probation officer. The court sought to prohibit defendant from working or volunteering for an organization that served primarily minors, such as daycares or schools. It could not necessarily produce a list of every such organization, but instead described the critical metric by which defendant (and his probation officer) can evaluate a prospective employer or volunteer site: does it primarily serve people under the age of eighteen? If the State seeks to enforce this condition with respect to an organization that does not clearly fall within this parameter, defendant would be free to raise an as-applied notice issue at that time, but we conclude that it is not impermissibly vague on its face. See, e.g., Cornell, 2016 VT 47, ¶¶ 20-22 (holding that condition prohibiting violent or threatening behavior is not facially invalid but may fail to provide adequate notice as applied in a particular case).

¶ 37. Moreover, the condition did not grant the probation officer discretion to approve or veto any position that defendant applied for—only a position with an organization that primarily serves children. This condition strikes a permissible balance of authority, offering the probation officer "some degree of flexibility" but not "open-ended authority." See Putnam, 2015 VT 113, ¶ 64 (quotation omitted).

V. Notification of Changes in Contact Information

¶ 38. Condition 31 requires defendant to "give [his] probation officer [his] home address, mailing address, telephone number and email address. If any of those change, [defendant] must

19

notify his probation officer within 48 hours."[11]  At the sentencing hearing, the State argued to impose a 24-hour window, and defendant argued for a 72-hour window.  The court split the difference and modified the condition to allow a 48-hour window.

¶ 39.  On appeal, defendant argues that his homelessness makes compliance with the 48-hour notification requirement unfeasible.  He points out that the trial court stated it did not perceive a risk from giving defendant 72 hours to notify his probation officer, and that under these circumstances it was an abuse of discretion to order a 48-hour notification requirement.  The State responds that this Court has upheld 48-hour notification conditions in the past and that the trial court's decision in this case was within its discretion.

¶ 40.  We upheld a 48-hour notification condition in Putnam, where the defendant had argued that the condition (as well as several others) were not related to his crime or rehabilitation.  We stated that "[i]mposition of substantially similar conditions relating to the administration of probation would be within the trial court's discretion in any case in which probation is ordered."  2015 VT 113, ¶ 48.  This was because "defendant's probation officer needs to know where defendant is living and working to understand defendant's environment, to visit with defendant, and to identify any impediments to successful rehabilitation."  Id.

¶ 41.  Our rationale in Putnam applies here as well.  Defendant argues that the circumstances of his case set it apart from our general proclamations in Putnam.  We agree that, because defendant is homeless, this condition of probation places a high burden on him.  However, his homelessness does not negate the purpose of the condition as we described in Putnam.  Defendant's probation officer still must know where he is living, visit with him, and identify impediments to successful rehabilitation.  Given the need for a notification condition, we do not believe that the trial court's imposition of a requirement that he provide notice of changes within

_____

[11]  This condition modifies condition B, which imposes the same requirement but with only a 24-hour window.

48 hours, when defendant had asked for 72 hours, was an abuse of discretion. We affirm condition 31.

## VI. Locations Where Children Congregate

¶ 42. Condition 37 provides that defendant "may not access or loiter in places where children congregate, i.e., parks, playgrounds, schools, etc., unless otherwise approved, in advance, by your Probation Officer or designee."

¶ 43. At the sentencing hearing, defendant objected to "the overbreadth of the condition," arguing that "the i.e. and the etcetera do not put him on sufficient notice of what may or may not be included." The State responded that if defendant sought an exception, such as entering a school to vote, "he can talk with his probation officer about that and make arrangements to go," and that "there's no reason for him to be at parks or places where children congregate." The court imposed the condition on public-safety grounds, reasoning that "he's pled guilty to two charges involving two minor children in this case." The court noted that the condition "doesn't mean he has to stay out of all parks, but if he's in a park in the children's playground portion, he absolutely needs to stay away from that."

¶ 44. On appeal, defendant argues that this condition was rendered fatally vague when the trial court stated that the condition "doesn't mean he has to stay out of all parks." We disagree, since the trial court's restatement of the condition was accurate.

¶ 45. We have previously upheld this condition against facial vagueness challenges. See State v. Gauthier, 2016 VT 37, ¶ 24, 201 Vt. 543, 145 A.3d 833; Cornell, 2016 VT 47, ¶ 23. We held that the condition was not overly vague because "the phrase 'where children congregate' is descriptive enough to put a defendant on notice that it includes all places where children are likely to be found in large numbers." Cornell, 2016 VT 47, ¶ 24 (quoting Gauthier, 2016 VT 37, ¶ 25).

¶ 46. We reject defendant's argument that the court's statements during his sentencing hearing rendered the otherwise permissible condition impermissibly vague. The trial court's

statements during sentencing did not contradict the meaning of the condition, but exactly described the condition as it has been interpreted by this Court. The trial court stated that defendant did not have to stay out of all parks, but only the portions of parks where children congregate. This is an accurate description of condition 37; it does not, for instance, prohibit defendant from accessing a state park or a dog park. Cf. United States v. Peterson, 248 F.3d 79, 86 (2d Cir. 2001) (noting that impermissibly vague condition could be read to prohibit access to any park, including "Yellowstone National Park or . . . an adult gym"); Gauthier, 2016 VT 37, ¶ 26 (comparing vague Peterson condition to condition at issue here). The instant condition makes clear that it applies to places where children congregate, and applies to parks only insofar as they fall into that category. The trial court's guidance on this point was therefore consistent with the condition and did not render it impermissibly vague on its face.

We affirm as to conditions 31 and 37; strike and reverse conditions 36, 38, and 40; and strike and remand conditions 41 and 42 for further action consistent with this opinion.

FOR THE COURT:

_____

Associate Justice

22