NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 94

No. 2018-333

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Morris D. Nelson | January Term, 2020 |

William D. Cohen, J.

Alexander N. Burke, Bennington County Deputy State's Attorney, Bennington, for
  Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Grearson, Supr. J.,
         Specially Assigned


¶ 1. **CARROLL, J.** Defendant appeals his convictions for (1) repeated aggravated sexual assault as part of a common scheme and plan, (2) sexual assault of a victim under the age of eighteen entrusted to his care by authority of law, and (3) sexual exploitation of a minor. He argues that the second charge is duplicative with both the first and third charges, in violation of the Double Jeopardy Clause; that the State's evidence on the second charge was insufficient to prove the victim was entrusted to his care by authority of law; and that the jury instruction on the first charge constituted plain error because the court failed to give a unanimity instruction.

Regarding defendant's first argument, we conclude that only the second and third charges are duplicative. Accordingly, we vacate the sexual-exploitation charge as requested by the State in the event we found the second and third charges duplicative. We reject defendant's other arguments and thus uphold the convictions on the sexual-assault and aggravated-sexual-assault charges. Under the circumstances of this case, a remand for resentencing is not warranted.

¶ 2. Viewed in the light most favorable to the State, the evidence presented at trial reveals the following facts. Around June 2015, defendant began teaching at a residential school and treatment program for girls with special needs located in Bennington, Vermont. He quickly developed a close relationship with complainant, a student at the school who was in the custody of New Hampshire's "DCF."[1] Beginning that summer, unbeknownst to the school, defendant began to spend time with complainant on weekends at her brother's residence in New Hampshire. In the fall of 2015, defendant and his wife began talking about having complainant live with them.

¶ 3. In October 2015, defendant took complainant to a concert in Manchester, New Hampshire. He provided her with so much alcohol that they were denied entry into the concert because complainant was, in her words, "way too drunk." They then returned to the hotel room defendant had booked; it had only one bed. Early the following morning, complainant woke up to find defendant on top of her, forcing his penis into her vagina. Complainant was unable to tell him to stop or push him away because she was too intoxicated. Defendant also forced complainant to

---

[1] Throughout the trial, witnesses referred to complainant's custodian as the New Hampshire "DCF," using the initialism for Vermont's Department of Children and Families. In fact, the New Hampshire child-protection agency is the Division for Children, Youth & Families. See N.H. Dep't of Health & Human Servs., Div. for Children Youth & Families, https://www.dhhs.nh.gov/dcyf/ [https://perma.cc/B4B9-KYYU]. We use the witnesses' terminology in describing the New Hampshire agency.

have sex at a hotel in Salem, Massachusetts, on October 31 of that year, and at a different hotel in New Hampshire during a weekend when she was visiting her brother.

¶ 4.    In late November, defendant stopped working at the school following an incident in which he yelled and cursed at a school program coordinator during a Thanksgiving celebration. Defendant had urged complainant to eat with himself and his wife, rather than with other residents of her dorm.  When the coordinator told complainant to return to the table with her dormmates, as required, defendant yelled angrily at the coordinator.

¶ 5.    At some point, complainant began staying regularly at the home defendant shared with his wife.  Complainant testified that defendant and his wife set up an arrangement through the New Hampshire court system, making both the defendant and his wife "permanent caring adults" (PCAs) for complainant.[2]  Thus, complainant was able to leave school three nights a week to stay in defendant's home.  She had her own room in the basement of the home.  Defendant's wife testified that because complainant was nearly eighteen, they did not follow a formal interstate foster-care process, and that instead it was most sensible for complainant to simply live with defendant and his wife with "permission from New Hampshire DCF."  When complainant lived with defendant, he was her primary caretaker.

¶ 6.    During Christmas break in December 2015, complainant stayed at defendant's house for roughly a week while his wife was in Mexico with her children.  Beginning on the second night, defendant entered complainant's room after she had "settled in" to bed and ran his hands up and down her body.  According to complainant, on at least one night, he sexually assaulted her by

---

[2]  Witnesses referred to this status as both "Permanent Caring Adult" and "Primary Care Adult."  The proper term is "Primary Caring Adult."  See N.H. Code Admin. R. He-C 6339.03(ai), http://www.gencourt.state.nh.us/rules/state_agencies/he-c6300.html    [https://perma.cc/MGB7-UGQ7] (defining "Primary Caring Adult").  For simplicity, we use the acronym PCA.

penetrating her vagina with his penis, and on at least three nights he jammed his fingers into her vagina. Defendant physically restrained complainant while sexually assaulting her. These assaults took place in complainant's bedroom in the basement of defendant's home.

¶ 7. Complainant testified to a host of other assaults. She testified that defendant groped her in a storage area outside her bedroom, in a computer room, in the kitchen, and on the deck. In a shed on the property, where she worked out a lot, he groped her, and on one occasion he grabbed her aggressively, started taking her clothes off, and ultimately penetrated her vagina with his penis and fingers. Defendant also groped complainant in his truck when they would drive to the store or the gym, and one time he refused to bring her home from the gym in New York where they worked out unless she complied with his demand for oral sex. Complainant did not initially report these assaults because she had come to depend on defendant and his wife for a place to live, food, a bank account, and a car. She eventually came forward after a period where she was "away from the house a lot more," during which time defendant "started getting more and more aggressive."

¶ 8. The State ultimately charged defendant with three counts: (I) repeated nonconsensual aggravated sexual assault as part of a common scheme and plan, in violation of 13 V.S.A. § 3253(a)(9); (II) sexual assault of a victim under eighteen years of age entrusted to defendant's care by authority of law (sexual assault–entrustment), in violation of 13 V.S.A. § 3252(d); and (III) sexual exploitation of a minor, in violation of 13 V.S.A. § 3258(c). The criminal division held a jury trial in June 2017. After the close of evidence, defendant moved for a directed verdict on Count II, sexual assault–entrustment, and Count III, sexual exploitation of a minor.

¶ 9. Defendant argued that he should be acquitted on the charge of sexual assault of a victim under eighteen entrusted to his care because the State failed to show that a sexual assault

4

occurred in Vermont prior to when he was fired by the Bennington School and no longer complainant's teacher. The State agreed that there was no evidence of an assault in Vermont before defendant was fired, but argued that he was still in a position of power over complainant because he had been authorized to provide for her health and welfare while she was residing with him. The trial court denied the motion but determined that all three charges would be limited to assaults that occurred in Vermont, and therefore the start date for all three charges would be December 1, 2015, the first day of the first month following defendant's termination from the school.

¶ 10. Defendant also argued that he should be acquitted on the charges in Counts II and III because the State failed to show that he was acting as complainant's legal guardian to prove the elements of entrustment (for Count II) or power, authority, or supervision (for Count III). The State argued that the jury could make both findings based on the testimony that New Hampshire DCF had approved complainant's residence with defendant. The court concluded that the evidence was sufficient to support the necessary findings for each charge.

¶ 11. During these discussions, the trial court determined that out-of-state acts could not serve as the basis for the charges and that, to ensure jury unanimity, the State had to select a specific act as the basis for each charge. The State disagreed with both determinations but, when pressed, identified the allegations of penis-vagina contact that took place in complainant's bedroom in December 2015 as the basis for each charge, including as the predicate sexual act for the aggravated-sexual-assault charge. Therefore, in instructing the jury on each count, the court specified, in part, that defendant was charged with "engag[ing] in a sexual act with [complainant] by touching his penis to her vagina in the basement bedroom in December 2015."

5

¶ 12.  Before instructing the jury, the trial court also noted that "there is some duplication" as to Counts II and III.  The court explained that Count II required the State to show that complainant was entrusted to defendant's care by authority of law and that Count III required the State to show an abuse of a position of power, authority or supervision.  The State responded, "There's different elements, but for our purposes, right now, I think both can go [to] the jury and then [if] there's return of guilty verdicts in both . . . we can have an argument about [whether] one of them is double jeopardy or not."  Defense counsel did not speak during this exchange.

¶ 13.  After the jury returned a guilty verdict on all three counts, defendant filed several motions, including a motion to require the State to make an election to remedy the double-jeopardy issue.  Defendant argued that there were double-jeopardy problems between Counts II and III, as well as between Counts I and II, and therefore the court should dismiss Count II.  The State argued that because defendant did not raise the double-jeopardy issues at trial, he forfeited those claims. The court issued a written decision concluding that the double-jeopardy claims had been raised but denying them on their merits.  The court determined that, for both Counts II and III and Counts I and II, each charge required proof of an element not part of the other charge.

¶ 14.  On appeal, defendant renews his two double-jeopardy arguments, contends that the evidence was insufficient to convict him of sexual assault–entrustment, and argues that the jury instructions did not ensure unanimity for the charge of aggravated sexual assault.  We consider each argument in turn.

I.  Double Jeopardy

¶ 15.  Defendant makes two claims under the Double Jeopardy Clause of the United States Constitution.  First, he argues that his convictions of both Count I, repeated aggravated sexual assault, and Count II, sexual assault–entrustment, violate his protection against double

jeopardy. Second, he argues that his convictions of both Count II, sexual assault–entrustment, and Count III, sexual exploitation of a minor, also violate that protection. The State counters that defendant forfeited his double-jeopardy claims by failing to raise the issue at trial and that defendant's sentence on all three counts does not violate the Double Jeopardy Clause.

¶ 16. We review these constitutional questions without deference to the trial court. State v. Gagne, 2016 VT 68, ¶ 36, 202 Vt. 255, 148 A.3d 986. The State argues that defendant "forfeited" his double-jeopardy claim by failing to raise it, thereby subjecting it to plain-error review. See State v. Dow, 2016 VT 91, ¶¶ 24-25, 202 Vt. 616, 152 A.3d 437 (holding that where defendant fails to raise double-jeopardy claim, claim is forfeited but not waived, and we review for plain error). But we have held that where a conviction for both offenses violates the Double Jeopardy Clause, "allowing the two convictions to stand denies defendant a substantial right and is plain error." Id. ¶ 28. We need not address the State's argument because we would reach the same result under either standard of review.

¶ 17. We first describe our framework for evaluating double-jeopardy claims, including the test in Blockburger v. United States, 284 U.S. 299 (1932). Applying that framework, we conclude that defendant's convictions on both Counts I and II—repeated aggravated sexual assault and sexual assault–entrustment—are not duplicative and thus do not violate the Double Jeopardy Clause, but that his convictions on both Counts II and III—sexual assault-entrustment and sexual exploitation of a minor—are duplicative and thus cannot stand together.

A. Double Jeopardy Generally

¶ 18. The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution states, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V; see also State v. Neisner, 2010 VT 112, ¶ 11, 189 Vt.

7

160, 16 A.3d 597 ("This guarantee is made applicable to Vermont through the Fourteenth Amendment's Due Process Clause."). This constitutional protection "safeguards a criminal defendant from facing multiple punishments for the same offense." See State v. Abel, 2019 VT 22, ¶ 10, 210 Vt. 1, 210 A.3d 439 (quotation omitted).

¶ 19. "[W]hen determining whether multiple convictions based on one act violate the Double Jeopardy Clause, our central inquiry is one of legislative intent, not constitutional prohibition." State v. Fonseca-Cintron, 2019 VT 80, ¶ 21, __ Vt. __, __ A.3d __ (quotations omitted). The Legislature may punish the same conduct under two or more statutory provisions, "but its intent to do so must be clear." State v. Breed, 2015 VT 43, ¶ 16, 198 Vt. 574, 117 A.3d 829 (quoting State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998)).

¶ 20. If the Legislature has not clearly indicated an intent to allow punishment under both statutes, we first apply the test of statutory construction laid out in Blockburger v. United States to determine whether the charges describe two offenses or only one. Fonseca-Cintron, 2019 VT 80, ¶ 21. The Blockburger analysis begins with the statutory language in question. Neisner, 2010 VT 112, ¶ 13. "Under the Blockburger test, the double jeopardy clause does not prevent multiple punishment if 'each provision requires proof of a fact which the other does not.' " State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 459 (1998) (quoting Blockburger, 284 U.S. at 304). We have recognized that even if, on the face of the statute, "each of the[] two crimes involves an element that the other does not," we will not permit both convictions if, "as specifically charged," the charges require proof of the same facts. Neisner, 2010 VT 112, ¶ 14 (holding that conviction for both offenses violated Double Jeopardy Clause where "all the elements of [one] charge were contained in the [other] charge").

¶ 21.     The <u>Blockburger</u> test "is only a tool of statutory construction," and our primary aim in construing the statute is to discern the Legislature's intent.  <u>Fonseca-Cintron</u>, 2019 VT 80, ¶ 24. Accordingly, the <u>Blockburger</u> analysis creates only a rebuttable presumption of legislative intent to authorize cumulative punishment that may be overcome " 'by a clear indication of a contrary legislative intent.' "  <u>Id</u>. (quoting <u>Grega</u>, 168 Vt. at 385, 721 A.2d at 460).  To the extent " 'the matter is not entirely free of doubt, the doubt must be resolved in favor of lenity.' "  <u>Breed</u>, 2015 VT 43, ¶ 32 (quoting <u>Whalen v. United States</u>, 445 U.S. 684, 694 (1980)).  "This policy of lenity means that the Court will not interpret a criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what the Legislature intended."  <u>Grega</u>, 168 Vt. at 387-88, 721 A.2d at 462 (quotation and alterations omitted).

## B.  Counts I and II

¶ 22.     We first hold that defendant's convictions on both Counts I and II—repeated aggravated sexual assault, in violation of 13 V.S.A. § 3253(a)(9), and sexual assault of a person under the age of eighteen entrusted to his care by authority of law, in violation of 13 V.S.A. § 3252(d)—do not violate the Double Jeopardy Clause.

¶ 23.     Because the Legislature has not explicitly indicated an intent to authorize multiple punishments for sexual assault under these two provisions for overlapping conduct, we apply the <u>Blockburger</u> test to the charges at issue.  To convict a person of aggravated sexual assault, the State must prove that the person committed the predicate crime of "sexual assault," pursuant to 13 V.S.A. § 3252, and must also prove the presence of one of the aggravating factors under 13 V.S.A. § 3253(a).  In this case, the predicate offense charged by the State for Count I was engaging in a sexual act "without the consent of the other person" under § 3252(a)(1).  The aggravating factor

charged by the State was that complainant was "subjected to repeated nonconsensual sexual acts as part of the actor's common scheme and plan" under § 3253(a)(9). Therefore, as Count I was charged, the State was required to prove that defendant (1) engaged in a sexual act, (2) compelled complainant to participate in the sexual act without her consent, and (3) subjected complainant to repeated nonconsensual sexual acts as part of his common scheme and plan.

¶ 24. To convict defendant of sexual assault–entrustment under 13 V.S.A. § 3252(d), the State needed to prove that defendant "engage[d] in a sexual act with a child who is under the age of 18 and is entrusted to the actor's care by authority of law." Thus, as charged in Count II, the elements were that (1) defendant engaged in a sexual act with complainant, (2) complainant was under the age of eighteen, and (3) complainant was entrusted to defendant's care by authority of law.

¶ 25. Examining the elements of these two offenses, each crime as charged requires proof of at least one element that the other does not. Both offenses require proof that defendant engaged in a sexual act with complainant. However, Count I requires proof that the sexual acts were nonconsensual, repeated, and part of defendant's common scheme and plan, none of which are elements of Count II. Count II requires proof that complainant was under the age of eighteen and entrusted to defendant's care by authority of law, which are not elements of Count I. Applying the Blockburger test, the two counts are not the same offense. Therefore, we presume that the Legislature has authorized cumulative punishment for the same conduct under the two statutory subsections in question—§ 3253(a)(9) and § 3252(d)—"because each subsection is presumed to define a distinct crime." State v. Ritter, 167 Vt. 632, 633, 714 A.2d 624, 625 (1998) (mem.). "The Blockburger presumption may be overcome . . . by a 'clear indication of contrary legislative intent.' " Grega, 168 Vt. at 385, 721 A.2d at 460 (quoting Albernaz v. United States, 450 U.S.

10

333, 340 (1981)).  We find no such clear legislative intent to preclude prosecution for both offenses as charged in this case, and our determination that the Legislature intended to allow prosecution under both statutory provisions for overlapping conduct is " 'more than a guess' " that would require applying the rule of lenity.  Id., at 787-88, 721 A.2d at 462 (quoting Whalen, 445 U.S. at 695 n.10).

¶ 26.    Section 3253(a)(9) prohibits the commission of aggravated sexual assault through repeated sexual acts as part of a common scheme and plan against any victim, regardless of age. The distinguishing element at the heart of the offense as charged is the repetition of nonconsensual sexual acts as part of a common scheme and plan.  See State v. Deyo, 2006 VT 120, ¶ 17, 181 Vt. 89, 915 A.2d 249 (recognizing that legislative intent underlying § 3253(a)(9) "is that repeated sexual assaults during an assaultive course of conduct or series of exertions of power will result in harsher punishment" (quotation omitted)).  On the other hand, § 3252(d) prohibits a person from committing any single sexual act against a youth under the age of eighteen entrusted by authority of law into the care of the perpetrator.  The distinguishing element at the heart of that offense is the commission of any single sexual act against a youth in the perpetrator's care by authority of law, considering that the youth is more vulnerable to coercion because of the power imbalance between the two persons.    Thus, the two statutory subsections involve distinct policy considerations addressing disparate harms, and it is not unreasonable to presume that the Legislature intended to allow prosecution for each violation under the circumstances of this case. In short, we see no clear legislative intent to prohibit cumulative punishment under these distinct statutes based on the perpetration of multiple sexual acts against a youth entrusted by law in the care of the perpetrator.

11

¶ 27. The fact that the predicate sexual act of the aggravated-assault charge is the same act charged under the sexual assault–entrustment statute does not persuade us to reach a contrary determination. In State v. Fonseca-Cintron, we rejected a double-jeopardy challenge to convictions on one count of domestic assault for recklessly causing bodily injury and two counts of aggravated domestic assault—one for attempting to cause serious bodily injury and one for threatening to use a deadly weapon.[3] 2019 VT 80, ¶¶ 6, 22-23. Presuming that the Legislature intended to allow cumulative punishment because each offense as charged had an element of proof distinct from the other charges, we stated that "[t]he possibility that domestic assault could be a lesser-included offense of first-degree aggravated domestic assault as charged in a particular case does not create a clear indication of contrary legislative intent."[4] Id. ¶ 25 (quotation omitted). Similarly, in this case, although the predicate sexual act underlying the aggravated-assault charge is the same sexual act underlying the sexual assault–entrustment charge, the aggravated-assault charge also alleges the critical additional element of repeated sexual acts as part of a common scheme.

¶ 28. Nor are we persuaded to reach a contrary decision by past cases in which we have found a double-jeopardy violation even though the charged offenses each contained distinct elements in satisfaction of the Blockburger test. For example, in State v. Ritter, the defendant was convicted, based on a single act of domestic abuse, of violating two separate subsections of the aggravated-domestic-assault statute—one for committing domestic assault that caused bodily

---

[3] In analyzing the case, we treated the defendant's conduct as one continuous act rather than separate acts. 2019 VT 80, ¶¶ 19-20.

[4] "An offense is lesser to a greater offense only if it has no elements that are not necessary to conviction for the greater offense." State v. Russo, 2004 VT 103, ¶ 17, 177 Vt. 394, 864 A.2d 655.

injury while violating specific conditions of a criminal court order and one for committing a second or subsequent domestic assault. We concluded that the <u>Blockburger</u> presumption was overcome and that a double-jeopardy violation existed because both convictions were based on the "defendant's unitary act against a single victim" and there was "substantial overlap between the aggravating factors" with which defendant was charged. <u>Ritter</u>, 167 Vt. at 633-34, 714 A.2d at 626 (noting that because "[a] person with a prior conviction for domestic assault may very well be subject to an order of protection preventing future abuse," it was "likely that in a substantial number of cases a person committing a subsequent domestic assault would fall under both sections" of the aggravated-domestic-assault statute). In contrast, the aggravated-assault conviction in this case was based on repeated sexual acts, and no significant overlap exists between the charged offenses in Counts I and II. Hence, the <u>Blockburger</u> presumption that the Legislature intended cumulative punishment where the crimes involve different elements is not overcome.[5]

¶ 29. Similarly, in <u>State v. Hazelton</u>, the State charged the defendant, based on an alleged "single act of sexual intercourse" with an underage child, with violating both "§ 3252(a)(3) by engaging in sexual intercourse with a person under the age of sixteen to whom he was not married" and "§ 3252(a)(1) by compelling a person to participate in a sexual act without consent." 2006 VT 121, ¶ 23, 181 Vt. 118, 915 A.2d 224 (quotation omitted). Reasoning that the element of compulsion is not an additional element in § 3252(a)(1) because a child cannot legally consent to a sexual act, we concluded that "despite some surface difference, the two offenses charged against defendant [were] essentially the same." <u>Id</u>. ¶¶ 24-26 (stating that upon "cursory review, the two charges against defendant do seem facially different," but that those differences, though

---

[5] The dissent turns this presumption on its head, concluding, notwithstanding the distinct elements in the two charges and the clear policy considerations, that the Legislature did not express a "clear intent" to allow cumulative punishments for both offenses. <u>Post</u>, ¶ 74.

"apparent," were "not real"). In contrast, the differences between the charged offenses in the case before us are both apparent and real.

¶ 30. Nor is the instant case controlled by past cases in which we have held that the offenses as charged precluded multiple convictions for the same conduct. For example, in State v. Neisner, the defendant was charged and convicted of two seemingly separate offenses—giving false information to a law enforcement officer and impeding a public officer. But because the underlying basis of the impeding charge was that the defendant had given false information to the officer, we held that obtaining a guilty verdict on both charges violated the Double Jeopardy Clause. Neisner, 2010 VT 112, ¶ 14 ("While impeding and false information may be independent statutory crimes, as specifically charged here, all the elements of the false information charge were contained in the impeding charge."). In contrast to Hazelton, here the convictions on the charges in Counts I and II did not "punish[] the same offense." Id.

¶ 31. Similarly, in State v. Grega, the defendant was convicted and sentenced on charges of aggravated murder and aggravated sexual assault based on his single act of murdering his wife while perpetrating a sexual assault. The aggravating factor for the murder charge was that the defendant committed the murder while perpetrating a sexual assault. The aggravating factor for the sexual-assault charge was that the defendant committed the sexual assault while causing serious bodily injury. We held that the charges did not satisfy the Blockburger test because proof of death will always include proof of serious bodily injury, and thus proof of the elements of the aggravated-murder charge necessarily proved every element of the aggravated-sexual-assault charge. Grega, 168 Vt. at 384-85, 721 A.2d at 459-460. After analyzing the two statutory schemes, we concluded that the Blockburger presumption that the Legislature did not intend to allow convictions under both statutes where the crimes as charged involved the same elements could not

be overcome.  Id. at 385-88, 721 A.2d at 460-62.  In contrast, in the instant case, the Blockburger test is met and the presumption is that the Legislature did intend to allow convictions for both offenses as charged in Counts I and II.  We find no basis to overcome that presumption.

¶ 32.  State v. Breed is another case in which the charged offenses did not satisfy the Blockburger test.  In that case, based on a single incident in which the defendant invited the complainant into his apartment under false pretenses and then forced her to engage in a sexual act without her consent, the State charged defendant with engaging in a "sexual act" with another person without that person's consent, in violation of 13 V.S.A. § 3252(a)(1), and engaging in "sexual activity" with a vulnerable adult without her consent, in violation of 13 V.S.A. § 1379(b)(1).  We concluded that the Blockburger test was not met as the offenses were charged and defendant was sentenced because the charged sexual activity under the vulnerable-adult offense was the same sexual act charged under the sexual-assault offense.  Breed, 2015 VT 43, ¶ 19.

¶ 33.  Here, we find no basis to overcome the contrary Blockburger presumption where the aggravated-sexual-assault charge required the State to prove that defendant engaged in repeated nonconsensual acts with the complainant.  Cf. State v. Wiley, 2007 VT 13, ¶ 11, 181 Vt. 300, 917 A.2d 501 (finding that Blockburger was satisfied and rejecting double-jeopardy challenge to convictions of both lewd-and-lascivious conduct with child and aggravated sexual assault based on defendant having committed repeated nonconsensual sexual acts as part of common scheme).  After considering the State's charges in Counts I and II, and examining the above case law, we conclude that defendant's convictions and sentencing under both counts do not violate the Double Jeopardy Clause.  Defendant was not punished for a "single act" under both counts, as the dissent asserts, post, ¶ 61, but rather for sexually assaulting a person under the age of eighteen entrusted

15

to his care by authority of law and, further, for assaulting that person repeatedly as part of a common scheme and plan.

## C. Counts II and III

¶ 34. On the other hand, we conclude that defendant's convictions on both Counts II and III—sexual assault–entrustment and sexual exploitation of a minor, in violation of 13 V.S.A. § 3258(c)—violate the Double Jeopardy Clause. Each of these two offenses, as defined by statute, technically requires proof of a fact that the other does not. However, as charged in this case, they required proof of the same set of facts and therefore constitute the same offense. Moreover, unlike with Counts I and II, the offenses are directed at the same harm stemming from coercive sexual relationships—although § 3252(d) addresses a more severe form of coercion than § 3258. We therefore hold that subjecting defendant to punishment for both crimes violates the Double Jeopardy Clause.

¶ 35. Under our initial Blockburger analysis, each charged statute contains a factual element not required by the other count. The relevant portions of § 3258 state:

> No person shall engage in a sexual act with a minor if:
>
> (1) the actor is at least 48 months older than the minor; and
>
> (2) the actor is in a position of power, authority, or supervision over the minor by virtue of the actor's undertaking the responsibility . . . to provide for the health or welfare of minors.

13 V.S.A. § 3258(a). Under subsection (c), with which defendant was charged, a person is subject to a higher penalty if they also "abuse[ their] position of power, authority, or supervision over the minor in order to engage in a sexual act." Id. § 3258(c). Therefore, under this section, the State had to prove: (1) defendant engaged in a sexual act with complainant; (2) at the time, complainant was under the age of eighteen; (3) defendant is at least forty-eight months older than complainant;

16

(4) defendant was in a position of power, authority, or supervision over complainant by virtue of his undertaking the responsibility to provide for the health and welfare of minors, and (5) defendant abused that position in order to engage in the sexual act. As discussed above, sexual assault–entrustment requires the State to prove: (1) defendant engaged in a sexual act with complainant; (2) at the time, complainant was under the age of eighteen; and (3) complainant was entrusted to defendant's care by authority of law. 13 V.S.A. § 3252(d). On their face, the statutes underlying both charges appear to have distinct factual elements: sexual exploitation requires proof that defendant was at least forty-eight months older than complainant, had undertaken to provide for the health and welfare of complainant, and abused his position of power over complainant—none of which are required by the sexual-assault statute. And sexual assault requires proof that complainant was entrusted to defendant's care by authority of law, which is not required by the sexual-exploitation statute.

¶ 36. However, defendant argues that because, as charged in this case, both the entrustment element and position-of-power element rest on the same factual basis—that defendant was caring for complainant with permission from New Hampshire DCF—he cannot be convicted of both offenses without violating the Double Jeopardy Clause. He points to State v. Breed, 2015 VT 43, ¶¶ 19-21, where we held that the State could not punish defendant for both sexual assault and sexual abuse of a vulnerable adult based on the same conduct.

¶ 37. We agree that our decision in Breed is applicable here. In that case, we concluded that, as charged, "every element that must be proved for a conviction of sexual assault under § 3252(a)(1) must also be proved for a conviction of sexual assault of a vulnerable adult under [13 V.S.A.] § 1379(b)." Id. ¶ 19. There was only one element that was required in § 3252(a)(1) but not § 1379(b): sexual assault required proof of a sexual "act," while sexual abuse of a vulnerable

17

adult could be based on sexual "activity." Id. We reasoned, however, that the only conduct alleged was conduct that was a "sexual act," and no evidence was presented of conduct that would constitute only "sexual activity." Id. ¶ 21. Thus, we determined that "the jurors necessarily concluded that defendant engaged in a sexual act with the victim, allowing the court to impose the higher sentence," and therefore "the sexual-assault charge did not require any proof of a fact or element not included in the vulnerable-adult charge." Id.

¶ 38. Here, both elements—entrustment under authority of law and an undertaking to provide for the health and welfare of children—rested on the same factual allegation. By December 2015, defendant was no longer complainant's teacher, and the only position of authority he held over her was his status pursuant to his agreement with New Hampshire DCF. In some circumstances, a person may meet the element of one offense but not the other—for instance, a babysitter or sports coach may have undertaken to provide for the health and welfare of children, but would not be entrusted with the care of children by authority of law. But in this case, the undertaking and entrustment elements were based on the same allegation.

¶ 39. We cannot presume that the Legislature intended to allow for multiple convictions, in circumstances such as this, where a defendant is both entrusted with the care of a complainant by authority of law and is in a position of power, authority, or supervision over the minor and abuses the position of power and authority. Compare 13 V.S.A. § 3252(d), with 13 V.S.A. § 3258(c). Both sexual assault–entrustment and sexual exploitation of a minor are directed at the same harm: older individuals in positions of power engaging in sexual acts with minors under their supervision. The potential for coercion in these situations is apparent, and therefore the Legislature has criminalized sex acts by adults in these situations. Although minors sixteen or over can legally consent to sex with adults in some circumstances, these statutes both created exceptions for

18

situations in which there is a power imbalance between the adult and minor. See State v. Graham, 2016 VT 48, ¶ 15, 202 Vt. 43, 147 A.3d 639 ("The [sexual-exploitation] statute is intended to protect minors between the ages of sixteen and eighteen who are victims of sex acts perpetrated by persons who are in positions of power, authority, or supervision over the minors by virtue of specified undertakings, thereby creating an imbalance in the relationship that effectively deprives the minors of being able to consent to sex acts."); see also State v. Bouchard, 2020 VT 10, ¶ 33 n.10, __ Vt. __, 228 A.3d 349 (stating that sexual-assault statute makes sex with sixteen- and seventeen-year-olds "criminal in circumstances where the minor may be more vulnerable to coercion"). Although the conceptual target of the two statutes is the same, the sexual assault statute imposes greater penalties when the perpetrator has been entrusted with a child's care by authority of law, reflecting the greater severity of the coercion in that context.[6] Compare 13 V.S.A. § 3252(f)(1) (assigning indeterminate life sentence and fine of up to $25,000 for sexual assault under § 3252(d)), with 13 V.S.A. § 3258(c) (imposing maximum sentence of five years and fine of $10,000 for sexual exploitation of minor as charged here).

¶ 40.    There may be some situations in which the elements are separately established for both sexual exploitation of a minor and sexual assault–entrustment—if, for instance, an adult serves in more than one role in a child's life. But in this case, where the State relied on the same fact to meet both the entrustment element of sexual assault and the position-of-power element of sexual exploitation, conviction of both offenses violates the Double Jeopardy Clause.

---

[6] Consistent with the heightened coercion in the entrustment context, the law essentially presumes an abuse of the position of entrustment in entrustment cases, while including "abuse of position" as an aggravating or enhancing factor pursuant to § 3258(c).

## D. The Mandate

¶ 41.   "Given our conclusion that there is a double-jeopardy violation," we must decide "which conviction to vacate and whether to remand the matter for resentencing." Breed, 2015 VT 43, ¶ 43.  The State has requested that we dismiss Count III, the sexual-exploitation count, if we concluded that Counts II and III were duplicative and thus violative of the Double Jeopardy Clause. Accordingly, we vacate Count III.  See Dow, 2016 VT 91, ¶¶ 29-30 (vacating lesser conviction upon State's request after noting that "the State has the right to choose which charge is to be dismissed" following finding of double-jeopardy violation).

¶ 42.   As for the second issue, defendant argues only that if we reverse the conviction on Count II (sexual assault–entrustment), we should remand for resentencing on Count I (aggravated sexual assault–repeated acts) because the trial court indicated that a two-year increase from the ten-year minimum sentence for the aggravated-sexual-assault conviction was required due to defendant's conviction on Count II.  We are not reversing defendant's conviction on Count II, however, and the trial court made no mention of Count III at the sentencing hearing with respect to increasing defendant's minimum sentence.  The maximum sentence for both Counts I and II is life imprisonment.  Given these circumstances, we are not persuaded that the trial court's sentence would change following our vacation of Count III.  Accordingly, we decline to remand the case for resentencing.  See Breed, 2015 VT 43, ¶ 44 (declining to remand for resentencing on affirmed conviction where it was clear from trial court's comments at sentencing that vacating separate count would not change sentence).

## II. Entrustment (Count II)

¶ 43.   We reject defendant's argument that the State failed to present sufficient evidence to establish an essential element of sexual assault–entrustment: that complainant was "entrusted to

[his] care by authority of law." See 13 V.S.A. § 3252(d). We conclude that the State did prove that complainant was entrusted to defendant's care "by authority of law," and that, in doing so, it was not required to prove that defendant had legal decision-making authority for complainant.

¶ 44. As discussed in Part I, a person is guilty of sexual assault if they "engage in a sexual act with a child who is under the age of 18 and is entrusted to the actor's care by authority of law or is the actor's child, grandchild, foster child, adopted child, or stepchild." 13 V.S.A. § 3252(d). The trial court instructed the jury that " '[e]ntrusting to the care of' means the authority [to] make legal decisions for [the complainant]. For instance, a parent does not entrust their child to [the] care of another parent if their child is having a sleepover at the second parent's home." The State objected to this instruction on the ground that the ability to make legal decisions for another is not necessary to meet the "entrustment" element of the statute.

¶ 45. On appeal, defendant argues that there is no evidence that PCAs have any decision-making authority. Therefore, he argues, there was insufficient evidence for the jury to conclude that complainant was entrusted to his care by authority of law.

¶ 46. When considering a challenge to the sufficiency of the evidence, "this Court reviews the evidence in the light most favorable to the State, excluding any modifying evidence, to 'determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt.' " State v. O'Neill, 2019 VT 19, ¶ 35, 209 Vt. 599, 209 A.3d 1213 (quoting State v. Brochu, 2008 VT 21, ¶ 21, 183 Vt. 269, 949 A.2d 1035). The jury's verdict will stand "so long as the jury by way of a process of rational inference could conclude beyond a reasonable doubt that defendant committed the acts . . . charged." Id. (quotation omitted). For purposes of reviewing the sufficiency of the evidence, we measure the evidence against the elements of the crime charged, and do not necessarily hold the State to additional elements not charged by the

State or essential to prove the crimes charged. <u>Musacchio v. U.S.</u>, 136 S. Ct. 709, 715 (2016). We review questions of statutory interpretation without deference. <u>State v. Berard</u>, 2019 VT 65, ¶ 7, __ Vt. __, 220 A.3d 759.

¶ 47. We conclude that, for the purposes of § 3252(d), the State need not prove that defendant had decision-making authority over complainant in order to prove that she was entrusted to his care by authority of law. We base this decision on the construction and purpose of the statute. This interpretation is also consistent with interpretations of comparable sexual-assault statutes in other states. Given our conclusion as to the interpretation of the statute, there was sufficient evidence for the jury to convict defendant of sexual assault under § 3252(d).

¶ 48. The plain language of § 3252(d) suggests that the statute encompasses a broader range of roles than only those with decision-making authority. "[W]e construe statutes according to their plain language because this is the best evidence of what the Legislature intended when it passed a law." <u>Berard</u>, 2019 VT 65, ¶ 24. Here, the statute explicitly applies to sexual acts performed by parents, grandparents, foster parents, adoptive parents, and stepparents—a list that includes categories of responsible adults who do <u>not</u> typically have legal decision-making authority concerning a minor. See <u>Vt. Baptist Convention v. Burlington Zoning Bd.</u>, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992) (holding that when construing an enactment with a series of defining terms, "the latter general terms will be construed to 'include only those things similar in character to those specifically defined' "). Moreover, the residual category of adults subject to the statute's restrictions is not expressly limited to only those who are empowered to make decisions for the child. Instead, the statute uses broader language, including anyone who is "entrusted [with the child's] care by authority of law." <u>Id</u>. Given the provisions of the statute as a whole, we do not infer that the Legislature intended only to reach those adults whose legal caretaking responsibilities

22

include making decisions on behalf of the child. See Springfield Terminal Ry. Co. v. Agency of Transp., 174 Vt. 341, 346-47, 816 A.2d 448, 453 (declining to read statute in more limited sense than its plain meaning).

¶ 49. The purpose of 13 V.S.A. § 3252(d) reinforces this interpretation. We have noted that § 3252(d) raises the age of consent to protect minors in "circumstances where the minor may be more vulnerable to coercion." Bouchard, 2020 VT 10, ¶ 33 n.10. Where minors between sixteen and eighteen are subjected to sex acts by persons in a position of power over them at the time of the act, there is an "imbalance in the relationship that effectively deprives the minors of being able to consent to the sex acts." Graham, 2016 VT 48, ¶ 15 (describing purpose of § 3258(a)). The possibility of coercion is enhanced when an adult has stepped into an official caretaking role and when the minor is dependent on them for their needs, including housing or resources. The power dynamics in such a relationship are not dependent on whether an adult has the capacity to make legal decisions for the minor. Nor would they be dependent on whether defendant was officially designated as a PCA by court order, or merely acting as a caretaker pursuant to formal authority from New Hampshire DCF. Restricting the application of the statute to only those with legal authority to make decisions on behalf of a child would be contrary to both the plain language of § 3252(d) and its purpose.

¶ 50. Given our understanding of the law and viewing the evidence in the light most favorable to the State, we conclude that the State produced sufficient evidence that complainant was entrusted to defendant's care by "authority of law." Complainant testified that defendant and his wife obtained PCA status, that complainant was legally permitted to stay with them three nights a week, and that they took her to doctor's appointments and court cases. Defendant's wife testified that while they did not go through a formal process to obtain custody, they nevertheless "met with

23

[complainant's] caseworker . . . and came up with a plan about her coming to live with us," and ultimately got "permission from New Hampshire DCF" to have complainant live with them. Based on this testimony, even if the jury discounted complainant's testimony that defendant and his wife obtained a court order based on the testimony of defendant's wife to the contrary, a reasonable jury could still have concluded that New Hampshire DCF formally authorized complainant's living situation with defendant, and thus that she was "entrusted to [defendant's] care by authority of law." 13 V.S.A. § 3252(d). New Hampshire DCF did not confer legal parental or guardianship status upon defendant, but it conferred legal authority to provide custodial care for complainant, which meets the statute's requirements. For these reasons, we conclude that the State's evidence was sufficient to sustain Count II.

### III.  Unanimity (Count I)

¶ 51.    Finally, we address defendant's argument that the trial court failed to instruct the jury that it must be unanimous as to the "repeated nonconsensual acts" that made up one of the elements of Count I—aggravated sexual assault based on repeated instances of sexual acts.

¶ 52.    Defendant did not preserve this argument, and we therefore review for plain error. State v. Bellanger, 2018 VT 13, ¶ 12, 206 Vt. 489, 183 A.3d 550 ("When an objection to a jury instruction is unpreserved—and the trial court has not had its due opportunity to avoid error—we review the claim on appeal for plain error."). On plain-error review, defendant must show that: "(1) there was error, (2) the error is obvious, (3) the error affects the substantial rights of and results in prejudice to the defendant, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." State v. Ray, 2019 VT 51, ¶ 6, __ Vt. __, 216 A.3d 1274 (quotation omitted). "Plain error will be found only in rare and extraordinary cases where the error

24

is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Lumumba, 2018 VT 40, ¶ 16, 207 Vt. 254, 187 A.3d 353 (quotation omitted).

¶ 53. We conclude that although the trial court did not instruct the jury that it had to be unanimous as to the repeated acts, the instructions did not amount to plain error. A specific unanimity instruction is required wherever either party materially distinguishes between different acts that might constitute the offense. Here, the trial court provided a specific unanimity instruction for the predicate sexual assault, but not for the "repeated nonconsensual sexual acts" required by the aggravating element. We conclude that the court's failure to do so does not amount to plain error because defendant cannot show prejudice. We therefore affirm defendant's conviction of repeated aggravated sexual assault.

¶ 54. Under the Vermont Constitution, a defendant may not be found guilty of a crime unless the jury is unanimous. Vt. Const. ch. I, art. 10 ("[I]n all prosecutions for criminal offenses, a person hath a right to . . . a speedy public trial by an impartial jury . . . without the unanimous consent of which jury, the person cannot be found guilty."). As a general rule, " 'where there is evidence of more than one act that would constitute the offense charged, the State must specify the act for which it seeks a conviction.' " Bellanger, 2018 VT 13, ¶ 9 (quoting State v. Gilman, 158 Vt. 210, 215, 608 A.2d 660, 664 (1992)). Where the State does not do so, the trial court may provide a "specific unanimity instruction," which "require[s] the jury to be unanimous in determining which act supports a conviction." State v. Robitille, 2019 VT 36, ¶ 48, 210 Vt. 202, 213 A.3d 437 (quotations omitted). This specific unanimity instruction is required in many, but not all, cases in which more than one act is presented as evidence of a single criminal offense. State v. Nicholas, 2016 VT 92, ¶ 23, 203 Vt. 1, 151 A.3d 799.

¶ 55. In determining whether a specific unanimity instruction is required, the "critical inquiry is whether either party has presented evidence that <u>materially</u> distinguishes any of the alleged multiple acts from the others." <u>Bellanger</u>, 2018 VT 13, ¶ 9 (quoting <u>Nicholas</u>, 2016 VT 92, ¶ 23). This may be the case where "the victim is unable to distinguish between a series of acts," or where the charge was based on multiple injuries that could be considered "neither materially nor conceptually distinct." <u>Nicholas</u>, 2016 VT 92, ¶¶ 23, 28. However, where the State or the defendant has presented evidence that "was sufficiently materially distinguishable to enable jurors to isolate the specific instances" that could constitute the offense, then a specific unanimity instruction is required. <u>Bellanger</u>, 2018 VT 13, ¶ 11.

¶ 56. A "mere possibility" that the jury was not unanimous does not necessarily rise to the level of plain error. <u>In re Carter</u>, 2004 VT 21, ¶ 26, 176 Vt. 322, 848 A.2d 281 (citing <u>State v. Holcomb</u>, 156 Vt. 251, 254-55, 590 A.2d 894, 895-96 (1991)). Plain error requires a showing of prejudice, or in other words a "<u>reasonable probability</u> that the error affected the outcome of the trial." <u>Bellanger</u>, 2018 VT 13, ¶ 15 (quotation omitted). Defendant must show that there was a "reasonable" likelihood that the jury's verdict was not unanimous. <u>Id.</u>; see also <u>Carter</u>, 2004 VT 21, ¶ 24 (holding there was no plain error because defendant had shown "little likelihood of prejudice"); <u>Nicholas</u>, 2016 VT 92, ¶ 32 (holding there was no plain error where non-unanimity was "theoretically possible, but . . . so highly unlikely that the mere theoretical possibility does not rise to the level of plain error").

¶ 57. Here, the State elected a specific act to serve as the <u>foundational</u> sexual assault for defendant's aggravated charge. The instruction for the foundational sexual assault was: "the State alleges that [defendant] engaged in a sexual act with [complainant] by touching his penis to her vagina in the basement bedroom in December 2015. You must be unanimous as to the specific

event that occurred." Although complainant described several instances in the bedroom, she testified that defendant penetrated her with his hand "three out of the rest of the four" nights that she was staying in defendant's house in December 2015. Complainant's testimony focused primarily on the first sexual assault and did meaningfully distinguish between the other incidents. Defendant does not challenge this portion of the jury instructions, and it is clearly sufficient to ensure a unanimous verdict as to the foundational sexual assault.

¶ 58. However, the State did not specifically identify which act or acts served as the additional act or acts required to prove repeated sexual assault under 13 V.S.A. § 3253(a)(9). A conviction under § 3253(a)(9) involves repeated nonconsensual acts, and therefore requires proof of "at least two acts, either as part of one continuous occurrence or as part of the defendant's common scheme and plan." See Bellanger, 2018 VT 13, ¶ 7 (describing requirements under identical language of § 3253a(a)(8)). The jury instruction for this element of the offense was that the "State alleges that [defendant] subjected [complainant] to repeated nonconsensual acts by penetrating her vagina with his fingers and penis on multiple occasions in December of 2015 in Vermont." This part of the instructions did not include a specific unanimity instruction, and it did not limit the conduct to assaults that occurred in complainant's bedroom. Thus, the jury was free to draw on not only the incidents in the bedroom, but also the other incidents complainant described, including incidents in the shed and truck. The State's evidence differentiated these events, specifying the context of each incident and the specific acts defendant committed. Thus, "[t]his is not a case in which generic evidence was presented of a multitude of more or less indistinguishable acts of sexual abuse over a period of time." Bellanger, 2018 VT 13, ¶¶ 10-11 (quotation omitted) (holding failure to give specific unanimity instruction was error because

27

complainant described "at least three separate incidents involving . . . four kinds of contact in great detail").

¶ 59. But even if the trial court erred in failing to include a specific unanimity instruction for the second repeated act under § 3253(a)(9), defendant has failed to show that he was prejudiced by the error. Defendant's theory of the case was that complainant's testimony was not credible. In his closing argument, counsel for defendant stated, "what is denied is that anything happened and the very nature of those facts," as testified to by complainant. Counsel argued that complainant's testimony was not credible because she described horrific sexual abuse that increased throughout the time she knew defendant even though she was simultaneously seeking "more and more time" at defendant's house, and because she only came forward when she and defendant were going through a "difficult time" during which they were "at each other's throats." Defendant did not distinguish any of the specific allegations of sexual assault or deny them on an individualized basis.

¶ 60. In light of these circumstances, for two reasons there is no "reasonable possibility" that some members of the jury found complainant credible as to certain instances of sexual assault while other members of the jury believed her credible as to different, exclusive instances. First, as in Bellanger, defendant's theory was "all or nothing," and the jurors were "either going to believe [complainant] or they're not." 2018 VT 13, ¶ 17 (quotation omitted). We reasoned in Bellanger that the defense had raised "only a single issue—witness credibility," and that the jury had convicted despite that defense. Id. ¶ 18. In that situation, and absent any evidence that the jurors would have reached a different verdict had a specific unanimity instruction been correctly given, the error was not reversible error. Id. The same is true here. Second, it is undisputed that the jurors were unanimous as to at least one instance of sexual assault in the bedroom because that

was the predicate offense for which a jury instruction was given. Complainant testified that defendant assaulted her in the bedroom with his fingers on three out of four nights while she was staying with him. It is highly unlikely that the jury believed defendant committed exactly one assault in the bedroom, but not more. Under the circumstances of this case, there is no reasonable possibility that the jury would have returned a different verdict had they received a proper instruction.

Defendant's sexual-exploitation conviction is vacated. Defendant's sexual-assault and aggravated-sexual-assault convictions, as well as the sentence imposed by the criminal division, are affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 61. **ROBINSON, J., dissenting.** I cannot agree that defendant may be convicted and punished for a single act of sexual assault pursuant to both Count I, which charges aggravated sexual assault under 13 V.S.A. § 3253(a)(9), and Count II, which charges sexual assault pursuant to 13 V.S.A. § 3252(d). This is not a scenario in which the Legislature has clearly indicated an intent to authorize dual convictions and punishments for sexual assault based on a single act. For that reason, I respectfully dissent.[7]

¶ 62. I agree with the majority's conclusion that a literal application of the Blockburger test to the aggravated sexual assault charge and the sexual assault–entrustment charge would support a presumption that the Legislature intended to allow punishment for both charges. But

_____

[7] I join the majority's analysis and conclusions with respect to defendant's challenges to the sufficiency of the State's evidence as to Count II, the trial court's instruction to the jury concerning Count I, and the duplicative nature of Counts II and III.

29

that is not the end of the analysis. The <u>Blockburger</u> test is an aid to discern legislative intent, not an end in itself. It is a tool that is particularly ill-suited to compound and predicate offenses. In general, a defendant can't be convicted and punished for both a greater- and a lesser-included offense, for both a predicate offense and a compound offense resting on the same predicate. Regardless of whether Counts I and II are greater- and lesser-included offenses, or a compound offense and a predicate offense, the critical issue in this case is whether the Legislature intended to treat sexual assault based on lack of consent pursuant to 13 V.S.A. § 3252(a)(1) and sexual assault based on the fact that a child under 18 is entrusted to the actor's care by authority of law pursuant to 13 V.S.A. § 3252(d), as distinct offenses subject to separate punishments. Based on our analysis in a similar context, I conclude that it did not. I elaborate on these points below.

¶ 63.   We have recognized, and the majority acknowledges, that the <u>Blockburger</u> test "is only a tool of statutory construction." <u>Ante</u>, ¶ 21 (quoting <u>State v. Fonseca-Cintron</u>, 2019 VT 80, ¶ 24, __ Vt. __, __ A.3d __). It is not dispositive of the double-jeopardy question. Our goal remains to discern whether the Legislature intended to authorize conviction and punishment for the act in question pursuant to both statutes. <u>State v. Grega</u>, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998) ("[W]hether or not a conviction and sentence may be had under each statute is a question of legislative intent, not constitutional prohibition."). Although the Legislature is free to impose multiple punishments, "its intent to do so must be clear." <u>Id</u>.

¶ 64.   We have also noted that the <u>Blockburger</u> test is "useful in identifying statutes that define greater and lesser included offenses in the traditional sense," but is "less satisfactory, and perhaps even misdirected, when applied to statutes defining 'compound' and 'predicate' offenses." <u>Grega</u>, 168 Vt. at 387, 721 A.2d at 461 (quoting <u>Whalen v. United States</u>, 445 U.S. 684, 708 (1980) (Rehnquist, J., dissenting)). "[T]wo statutes stand in the relationship of compound and predicate

30

offenses when one statute incorporates several other offenses by reference and compounds those offenses if a certain additional element is present." Whalen, 445 U.S. at 709 (Rehnquist, J., dissenting). Justice Rehnquist offered the example of a statute providing that "[w]hoever . . . uses a firearm to commit any felony for which he may be prosecuted in a court of the United States . . . shall . . . be sentenced to a term of imprisonment for not less than one year nor more than ten years." Id. (quoting 18 U.S.C. § 924(c)(1)). He explained that any one of a plethora of felonies could serve as the predicate for a violation of the statute. By contrast, we have explained the traditional relationship of greater- and lesser-included-offenses as follows:

> Traditionally, greater and lesser-included offenses reflect a " 'continuum of culpability' " in which each offense along the continuum " 'serve[s] to vindicate the same social norm.' " For example, first-degree murder and murder in lesser degrees are themselves lesser-included offenses of aggravated murder because each of these offenses serves to vindicate the commission of a homicide. The offenses along the continuum are logically related. The progression along this continuum reflects increasingly culpable acts of homicide warranting increasingly severe punishment.

Grega, 168 Vt. at 387, 721 A.2d at 461 (citations omitted).

¶ 65. The law is clear that in the absence of a "clear indication of a contrary legislative intent," a defendant cannot be convicted of and punished for both an offense and a lesser-included offense. See Grega, 168 Vt. at 384-85, 721 A.2d at 459-60 (concluding that serious bodily injury was not separate element from death because "proof of death will always include proof of serious bodily injury"); see also, e.g., Breed, 2015 VT 43, ¶ 19 (holding that multiple convictions violated Double Jeopardy Clause where every element of sexual-assault charge must also be proved for charge of sexual assault of vulnerable adult). In the context of compound and predicate offenses, the United States Supreme Court has explained that the Double Jeopardy Clause prohibits dual convictions of a compound offense and the specific predicate offense relied upon to support the

31

conviction of the compound offense.  See <u>Whalen</u>, 445 U.S. at 693-94.  In <u>Whalen</u>, the Court explained that a defendant charged with felony murder based upon a killing in the course of a rape cannot be convicted of both rape and felony murder, but a defendant charged with felony murder based upon a killing in the course of a robbery may be convicted of both rape and felony murder. <u>Id</u>.

¶ 66.    The two statutes at issue here have some characteristics of traditional greater- and lesser-included offenses, and some features of the compound and predicate offense framework. The aggravated sexual assault statute establishes greater penalties for sexual assaults committed under any of nine enumerated circumstances, including when the actor subjects the victim to repeated nonconsensual sexual acts as part of a common scheme and plan.  13 V.S.A. § 3253(a). "Sexual assault" is nowhere defined in § 3253.  Instead, the offense of aggravated sexual assault essentially provides enhanced penalties for the commission of a sexual assault pursuant to § 3252 under any of the aggravating circumstances.  In that respect, § 3253 and § 3252 relate as traditional greater- and lesser-included offenses.  They are logically related, target the same norm, and reflect the Legislature's vision of a "continuum of culpability" for the act of sexual assault.  See <u>Grega</u>, 168 Vt. at 387, 721 A.2d at 461.  Simply put, the aggravated sexual assault statute does not define an offense distinct from sexual assault; rather, it establishes greater penalties for sexual assaults committed under certain aggravating circumstances.

¶ 67.    However, § 3252 identifies numerous overlapping sets of elements that can support a conviction of sexual assault.  For example, a defendant may be convicted for the offense of sexual assault for compelling the other person to participate in a sexual act by threatening or coercing the other person, § 3252(a)(2); engaging in a sexual act with a child under the age of sixteen in the absence of any statutory exceptions, § 3252(c); or engaging in a sexual act with another after

32

substantially impairing the ability of the other to appraise or control conduct by administering drugs or intoxicants without the knowledge of the other person, § 3252(b). Because proof of any one of these sets of elements can establish the necessary predicate act of sexual assault to support a conviction of aggravated sexual assault under § 3253, no one set of elements is logically necessary to a charge of aggravated sexual assault. In that sense, each of the various forms of sexual assault described in § 3252 relate to the charge of aggravated sexual assault as predicate and compound offenses. Absent a clearly expressed legislative intent to the contrary, a defendant may not be convicted of both a predicate offense and a compound offense based on that predicate. See Whalen, 445 U.S. at 693-94. So defendant clearly could not be convicted of both sexual assault under § 3252(d) (engaging in a sexual act with a child under the age of eighteen entrusted to the actor's care by authority of law) and aggravated sexual assault under § 3253(a)(9) based on the violation of § 3252(d) plus an aggravating factor.

¶ 68. The State avoids such an obvious double-jeopardy violation by predicating the aggravated sexual assault charge on a sexual assault based on one set of elements—compelling a person to participate in a sexual act without the other person's consent under § 3252(a)(1)—and resting the straight sexual assault charge for the same act on a different set of elements—engaging in a sexual act with a child under the age of eighteen entrusted to the actor's care by authority of law under § 3252(d). If these two charges are distinct—like robbery and rape in the felony murder example above, supra, ¶ 65, defendant may be subject to conviction for both aggravated sexual assault and assault on this basis. If, on the other hand, convicting defendant of both sexual-assault offenses (§ 3252(a)(1) and § 3252(d)) based on a single act would violate the Double Jeopardy Clause's prohibition of multiple punishments for the same act, then predicating an aggravated

sexual assault charge on one offense while simultaneously charging the other as a distinct sexual assault offense would likewise improperly impose duplicative punishment for the same act.

¶ 69.    Thus, the critical question, unaddressed by the majority, is whether the Legislature intended to authorize cumulative punishment for two charges of sexual assault for the same incident under both § 3252(a) and (d).  If § 3252(a)(1) and § 3252(d) are functionally the same, or are alternate ways to commit sexual assault, then the sexual-assault offense, as charged, is a lesser-included offense of aggravated sexual assault.  See State v. Ritter, 167 Vt. 632, 634, 714 A.2d 624, 626 (1998) (mem.) (holding that convictions under both subsections of aggravated domestic-assault statute violated Double Jeopardy Clause because they were two alternate ways of committing same offense).[8]

¶ 70.    My conclusion that the Legislature intended subsections (a) and (d) to describe different ways of committing essentially the same offense rests in large part on this Court's

---

[8] The majority never grapples with this fact, instead comparing the elements of and policies underlying the sexual assault charge to those underlying the aggravated circumstances of the aggravated sexual assault charge—that is, repeated sexual acts as part of a common scheme or plan.  I do not disagree with the majority's recognition that the aggravated sexual assault charge rests on additional elements that promote distinct policies from those underlying the predicate sexual assault charges.  See ante, ¶ 28 n.5.  The additional elements serve the policies supporting heightened penalties for sexual assault committed under specified circumstances.  These elements, and the policies they promote, apply without regard to the elements of the underlying sexual assault upon which the aggravated charge is predicated.  But the majority's analysis does not account for the fact that an underlying sexual assault is necessarily baked into the elements of the aggravated sexual assault charge. It isn't enough to compare the sexual assault charge to the aggravating circumstances of the aggravated sexual assault charge; based on that reasoning, a defendant could be punished for a sexual assault on account of nonconsent and aggravated sexual assault predicated on the same nonconsensual sex act coupled with aggravating factors, even though the former would indisputably be a lesser-included offense.  To determine whether the sexual assault charged here is a lesser-included offense relative to the aggravated sexual assault charge, one must compare the sexual assault charged to the sexual assault charged as a predicate of the aggravated sexual assault.

analysis in State v. Hazelton, 2006 VT 121, 181 Vt. 118, 915 A.2d 224, as well as on the perverse implications of a contrary construction.

¶ 71. In Hazelton, this Court held that two subsections of the sexual assault statute, now listed as subsections (a) and (c)—lack of consent and statutory rape, respectively—define the same crime for double-jeopardy purposes. 2006 VT 121, ¶ 38. In that case, the defendant had sexually assaulted a minor by use of force and was charged with two counts of sexual assault based on that act—one for the nonconsensual sexual act, and one for the sexual act with a minor. Acknowledging the Blockburger test, we noted that the two charges seemed "facially different." Id. ¶ 25. However, we stated that at common law, it is legally impossible for an unmarried child under the age of sixteen to consent to sexual acts, and therefore any conviction under subsection (c) necessarily satisfies all of the elements for subsection (a). Id. ¶ 37; see also State v. Deyo, 2006 VT 120, ¶ 11, 181 Vt. 89, 915 A.2d 249 (upholding jury instruction that to prove lack of consent, jury "must find that [complainant] was under the age of sixteen at the time of any sexual act, making such acts nonconsensual as a matter of law"). Because "both subsections [(a) and (c)] require only an allegation that the defendant engaged in a sexual act with a person under the age of sixteen," we held that they were the same offense for cases involving such victims. Hazelton, 2006 VT 121, ¶¶ 38-39.

¶ 72. The logic of Hazelton applies to § 3252(d) as well. The Legislature has determined that consent is no defense to sexual assault of a minor who is entrusted to the defendant's care by authority of law. 13 V.S.A. § 3252(d). In fact, both the majority and dissent in Hazelton agreed that "sexual acts could not be considered consensual between father and daughter," and the dissent recognized that this view was codified in what is now 13 V.S.A. § 3252(d). 2006 VT 121, ¶ 75 (Dooley, J., dissenting); see also id. ¶ 30. Like sex with a person under sixteen years of age, sex

under subsection (d) is a crime regardless of whether the minor purports to consent. And like sex with a person under sixteen years of age, sex with a minor entrusted to one's care is illegal because "[s]exual acts between a child and an adult necessarily involve exertions of power." Deyo, 2006 VT 120, ¶ 17. Although sexual assault–entrustment does not have the same roots in common law as statutory rape, the principles we relied on in Hazelton support the conclusion that § 3252(a) and (d) describe two ways to commit one offense, rather than two separate offenses.

¶ 73.    In addition, allowing both convictions in this situation would result in illogical results. Subsection (e) prohibits sexual acts with a child under the age of sixteen if:

> (1) the victim is entrusted to the actor's care by authority of law or is the actor's child, grandchild, foster child, adopted child, or stepchild; or
>
> (2) the actor is at least 18 years of age, resides in the victim's household, and serves in a parental role with respect to the victim.

13 V.S.A. § 3252(e).[9] Pursuant to Hazelton, because a child under the age of sixteen cannot legally consent, a defendant could not be convicted under subsection (e) and also under subsection (a) for a single act. The same is true for subsections (d) and (a) if the victim was under sixteen. It would not make sense to construe the statute to preclude multiple charges for a sex act with a fifteen-year-old entrusted to the defendant's care, but to allow multiple convictions for the same act with respect to a victim who has reached the age of sixteen. The statutory scheme as a whole generally

---

[9] I note that subsections (d) and (e)(1) are substantively identical except for the age of the victim. For that reason, subsection (e)(1) is completely redundant because any case that could be charged under subsection (e)(1) could also be charged under subsection (d), and the penalties for violating the respective provisions are now identical. In addition, subsection (c) addresses sexual acts with a child under sixteen with certain exceptions, and subsection (e) addresses sexual acts with a child under the age of sixteen by an adult in a parental role or other listed relationship to the child. Virtually any case that can be charged under § 3252(e) can also be charged under 3252(c), although the penalty for the latter charge is less severe. These various additional overlaps further support the view that the respective subsections of § 3252 do not necessarily each describe a distinct crime such that the same act can be punished separately under multiple subsections.

punishes sexual assault of younger minors more severely. See 13 V.S.A. § 3253(a)(8) (elevating sexual assault to aggravated sexual assault when victim is under thirteen and actor is at least eighteen years old); Deyo, 2006 VT 120, ¶ 19 (recognizing "the enhanced concern for the protection and well-being of minors and the gravity we attach to crimes involving the exploitation of minors" (quotation omitted)); compare 13 V.S.A. § 3253a(b) (providing for minimum penalty of twenty-five years imprisonment for aggravated sexual assault of minor); with 13 V.S.A. § 3253(b) (providing for minimum penalty of ten years imprisonment for aggravated sexual assault). It would be contrary to the statutory structure and legislative purpose as a whole to prohibit double convictions for younger minors but allow them for older minors. See Ritter, 167 Vt. at 633, 714 A.2d at 625-26 (holding that "Blockburger presumption is overcome . . . because construing the subsections of § 1044(a) as defining separate offenses would lead to absurd results that could not have been intended by the Legislature").

¶ 74.    For the above reasons, I cannot join the majority's conclusion that the Legislature has expressed a clear intent to allow conviction of both sexual assault under subsection (d) and aggravated sexual assault with § 3252(a) as a predicate offense for a single act. Because I would remand for the State to elect which conviction or convictions should stand in light of the two sets of duplicative charges, I respectfully dissent.

_____
                          Associate Justice

37